STATE OF NORTH CAROLINA v. MICHAEL DENNIS MOORE

No. 119

(Filed 15 July 1980)

1. **Criminal Law § 90.2— impeachment of own witness by prior inconsistent statements**

In this prosecution for felonious burning of a dwelling house in which defendant's sister testified as a witness for the State that she told her landlord to call the fire department because his tenant house was on fire and that she did not know how the fire started, the trial court committed prejudicial error in permitting the State to impeach its own witness by presenting testimony by the landlord that defendant's sister told him to call the fire department and the sheriff because defendant was setting the house on fire.

2. **Criminal Law § 90.2— erroneous declaration of witness as hostile witness**

The trial court erred in declaring defendant's sister, who had been called as a witness for the State, a hostile witness and in permitting the State to impeach her testimony with prior inconsistent statements she had made to a police officer where the State was not misled, surprised or entrapped by the sister's testimony but was aware that she intended to repudiate statements she allegedly made to the officer.

3. **Arson § 5— felonious burning of dwelling—no necessity for instruction on attempted arson**

The evidence in a prosecution for felonious burning of a dwelling house did not require the court to instruct on the lesser included offense of attempted arson.

APPEAL by defendant from *Reid, J.* at the 12 November 1979 Session of NASH County Superior Court.

Defendant was charged in an indictment, proper in form, with the unlawful, willful, felonious and malicious burning of a dwelling house.

The State's evidence tended to show that on 14 March 1979 at approximately 8:00 p.m. Ms. Geraldine King was at home cooking supper for her family and there were ten other people in the

house. She went into the front room of the house and observed that the arm of the couch was on fire and that her brother, the defendant, was sitting on the couch. She touched him and asked him what was wrong and he told her to take her hands off him. She went into the bedroom to get her clothes and papers to take them out of the house and defendant followed her. In the bedroom, he kicked over a wood heater with fire in it but she did not know whether a fire started as a result of this event.

Ms. King went to the home of her landlord, Buck Baker, and reported to him that his tenant house was on fire. She testified that she told him that she did not know how the fire started. Baker testified that when Ms. King came to his home she "and Annette said call the fire department and the Sheriff that Mike [the defendant] was setting the house on fire." Baker told his wife to call the fire department and he went to the tenant house where he found everything "messed up" in every room.

A volunteer fireman who went to the scene testified that he had to push his way past the defendant who had told him that he should not go in because the premises were burning. Robbins observed the burning couch and flames in a room beyond the front room but he could not get to the other room. The fire was extinguished in about thirty minutes and each room was found to have been burned and to have been damaged by smoke and water.

Defendant's sister, Glenda Joy Moore, was called as a witness for the State and after a *voir dire* was conducted she was declared a hostile witness and the State was allowed to impeach her. In the presence of the jury, she testified that she did not remember giving Captain Reams of the Nash County Sheriff's Department a statement concerning her knowledge of how the fire started. She testified that she did not tell Officer Reams that she saw her brother strike several matches and "put the third match on the couch;" that she did not tell the officer that as she sat on the couch the defendant "struck a match and said he was going to set the house on fire;" and that she did not know that her brother set fire to the house.

Annette Moore testified for the defendant. She stated that she was in the kitchen and her nephew came in and told her that the house was on fire. She did not go into the front room and she

did not see the defendant set fire to the couch. She went with her sister, Geraldine King, to Buck Baker's house and told him that the house was on fire but she did not remember saying that anyone set the house on fire.

The jury found the defendant guilty as charged and upon imposition of a life sentence he appealed to this Court.

Other facts relevant to the decision will be related in the opinion.

*Robert A. Evans for the defendant.*

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General Isaac T. Avery III for the State.*

COPELAND, Justice.

Defendant maintains that it was error to permit Baker to testify over objection as to a prior statement made to him by Geraldine King when the prior statement impeached material portions of her testimony. Defendant further argues that the trial judge erred in ruling that Glenda Joy Moore was a hostile witness and that the State could impeach her when the State was not misled, surprised or entrapped by her testimony when it was well aware prior to calling her that she intended to deny making certain statements to Officer Reams. We agree with defendant's position on both grounds; therefore, he is awarded a new trial.

[1] The rule in criminal cases is that neither the district attorney nor the defendant can impeach his own witness by evidence that the character of the witness is bad or that he has made prior statements inconsistent with or contradictory to his trial testimony. *State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973) (State cannot impeach its own witness in a criminal case); *State v. Austin*, 299 N.C. 537, 263 S.E. 2d 574 (1980) (defendant cannot impeach his own witness in a criminal case); *cf.* G.S. 1A-1, Rule 43(b) (a party may impeach an unwilling or hostile witness in a civil case).

Ms. King testified that she told Baker to call the fire department because his tenant house was on fire but she did not know how the fire started. Baker testified that Ms. King told him to call the fire department and the Sheriff because "Mike [the de-

fendant] was setting the house on fire." The trial judge instructed the jury to consider this testimony by Baker solely for the purpose of corroborating Ms. King's testimony if the jury found that it did so corroborate.

The rule is that prior consistent statements of a witness offered to strengthen his credibility are properly admitted with a limiting instruction when so requested. 1 Stansbury's N.C. Evidence §§ 51-52 (Brandis Rev. 1973) and cases cited therein. Such statements are admissible only when they are in fact consistent with the witness' testimony. *State v. Warren*, 289 N.C. 551, 223 S.E. 2d 317 (1976); *State v. Bagley*, 229 N.C. 723, 51 S.E. 2d 298 (1949); *State v. Melvin*, 194 N.C. 394, 139 S.E. 762 (1927). When the statements are generally consistent with the witness' testimony, slight variations will not render them inadmissible. *State v. Warren, supra*. Such variations affect only the weight of the evidence which is for the jury to determine. *State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972) *cert. denied sub nom.*, 410 U.S. 958 (1973); *State v. Norris*, 264 N.C. 470, 141 S.E. 2d 869 (1965).

Prior inconsistent statements do not corroborate a witness' testimony. To the contrary, such statements contradict and thus impeach the witness' testimony. The State is not entitled to offer such "new" evidence under the claim of corroboration. *State v. Brooks*, 260 N.C. 186, 132 S.E. 2d 354 (1963). Additional and contradictory testimony is not admissible as corroborative evidence. *State v. Warren, supra; State v. Fowler*, 270 N.C. 468, 155 S.E. 2d 83 (1967).

The admission of this portion of Baker's testimony was prejudicial error because without this statement to directly implicate the defendant as the perpetrator of a crime, the State's case consisted solely of circumstantial evidence showing that the couch was on fire and that defendant was sitting there. Even though this is enough evidence to take the case to a jury, there is a reasonable possibility that a different result would have been reached had this direct testimony implicating the defendant not been admitted; therefore, its admission was prejudicial error. *State v. Warren, supra; State v. Fowler, supra.*

[2] It was also error for the trial judge to declare Glenda Joy Moore a hostile witness and allow the State to impeach her testimony with prior inconsistent statements.

There is an exception to the anti-impeachment rule and it provides that the State may impeach its own witness when it has been misled, surprised or entrapped to its prejudice. *State v. Smith*, 289 N.C. 143, 221 S.E. 2d 247 (1976); *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975). Surprise does not mean mere disappointment; it means taken unawares by the witness' testimony. *State v. Pope, supra.* The trial judges exercise their discretion on this issue when the State moves to have a witness declared hostile. A *voir dire* hearing is usually necessary in order to make this determination.

When there is no surprise, the State cannot impeach its own witness. However, the State is not bound by what that witness says. The district attorney may show by other witnesses or other competent and admissible evidence that the facts are different from those to which the witness has testified. *Id.* In availing itself of this opportunity the State cannot confront the witness with his prior inconsistent statements in order to impeach his credibility and the State cannot have another witness testify as to statements made to him by the first witness under the claim of corroboration when in fact the statements do not corroborate but instead contradict and impeach the first witness' trial testimony.

When the State has been misled, surprised or entrapped to its prejudice by the testimony of an evasive or hostile witness then, in the trial judge's sound discretion, the district attorney may call the witness' attention to his prior inconsistent statements for the purpose of refreshing his memory, awakening his conscience or impeaching his credibility. *Id.; State v. Tilley*, 239 N.C. 245, 79 S.E. 2d 473 (1954). When the witness "has treacherously induced the State to call him by representing that he will give testimony favorable to its contentions and then surprises the solicitor with testimony contra, cross-examination is not likely either to 'refresh his memory' or 'awaken his conscience.'" *State v. Pope, supra* at 512, 215 S.E. 2d at 145. The primary value of confronting the witness with his prior inconsistent statements when he has entrapped the State in this manner is to impeach his credibility. *Id.*

Here, the trial judge declared Moore a hostile witness and allowed the State to impeach her with prior inconsistent statements. There was no determination at the end of the *voir*

State v. Moore

*dire* that the State had been misled, surprised or entrapped to its prejudice. Indeed, the record discloses that just the opposite is true. The trial judge stated in the absence of the jury when Moore was called to the stand:

> "For the purpose of the record, it is my understanding that the district attorney has been advised and the defense attorney is aware of the fact that there was a statement made by this witness to Captain Reams at some time following the fire. That there is some information in the possession of both the district attorney and the defense attorney that the witness intends to repudiate in whole or in part the statement which she made to Sheriff Reams, is that correct?

> [District attorney]: Yes.

> [Defense attorney]: Yes.

> And further the State by virtue of that repudiation intends to move the Court to have this witness declared to be a hostile witness, in order that the State may cross-examine and impeach the witness, is that correct?

> [District attorney]: Yes sir."

Thus, it is clear that the State was not misled, surprised or entrapped by the witness' trial testimony and the witness was improperly declared to be a hostile witness in violation of the rule as set forth in *Smith* and *Pope*. This impeachment testimony was prejudicial to the defendant because it tended to show that the witness was lying when she refused in her testimony to directly implicate the defendant as the one who started the fire. There is a reasonable possibility that without this testimony a different result would have been reached at the trial since without such evidence the State's case was wholly one of circumstantial evidence that the defendant started the fire. *See, State v. Fowler, supra.*

[3] Defendant further argues that the trial judge erred in refusing to instruct on the lesser included offense of attempted arson. There is no merit to this contention. There is a duty to charge on any lesser included offense raised by the evidence even in the absence of a request for the instruction. *State v. Redfern*, 291 N.C. 319, 230 S.E. 2d 152 (1976). In *State v. Green*, 298 N.C. 793,

259 S.E. 2d 904 (1979) this Court found that there was sufficient evidence to warrant a charge on attempted arson. Defendant's statement to the police was that he had poured diesel fuel around the front door of the house and had trouble getting the fire to start when the occupants of the house caused him to run away. The occupants testified that they saw gas running under the *front* door and discovered fire at the *back* door. Here, there is evidence that the fire started on the couch where defendant was seated. There is no evidence of attempted arson. A fireman testified that every room in the house was damaged by fire. Defendant either did or did not start that fire; therefore, he is either guilty as charged or not guilty.

For the two reasons discussed above defendant is given a

New trial.