STATE OF NORTH CAROLINA v. HERMAN CHARLES

No. 8114SC97

(Filed 1 September 1981)

1. **Criminal Law § 91— speedy trial—arrest or indictment—running of 120 day period**

G.S. 15A-701(a1)(1) reflects the clear intent of the General Assembly that it is the last occurring of either arrest or indictment which triggers the running of the 120 day period within which trial must begin.

2. **Criminal Law § 90— no impeachment of State's own witness**

Where a State's witness, prior to recess, was not specific about what she heard defendant and a homicide victim say, but the witness, after recess, testified on direct examination to the exact words of defendant and the homicide victim, there was no merit to defendant's contention that the trial judge erred by permitting the State to impeach its own witness, since the State was not seeking to introduce prior inconsistent statements or to impeach the witness's credibility.

3. **Criminal Law § 89.5— corroborating testimony—slight variances**

If testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible.

**4. Criminal Law § 114.2— instructions—omission—no expression of opinion**

The trial judge did not improperly express an opinion during instructions to the jury where he declined to repeat profanity to which witnesses had testified and then explained his omission.

APPEAL by defendant from *Godwin, Judge.* Judgment entered 24 April 1980 in Superior Court, DURHAM County. Heard in the Court of Appeals 2 June 1981.

Defendant was indicted on 8 January 1980 and charged with the second degree murder of Freddie Robinson. Defendant was initially arrested on 14 August 1979 and was released on bond on 21 August 1979. Defendant's motion to dismiss for failure to grant him a speedy trial, filed on 14 December 1979, was denied after a hearing on 10 April 1980. Defendant was tried on 21 April 1980.

At trial the State's evidence tended to show that on the night of 14 August 1979, defendant, Ben Brooks, and Freddie Robinson were visiting the residence of Willie Vine. Several of Vine's children were at home that night, including Damita Jo Lemon, age seventeen, and Willie Vine, Jr., age fourteen. After shooting pool in the basement of Vine's house for approximately one hour, defendant returned to his car parked in Vine's driveway. Upon discovering that his car keys were no longer in the ignition where he had left them and that his pistol had been removed from the car's glove compartment, defendant asked everybody present at the house about the missing items. No one admitted taking the items and defendant called the police. A police officer arrived soon thereafter and conducted an unsuccessful search of the immediate area for the missing items. After a brief investigation the police officer left and soon thereafter Ben Brooks and Freddie Robinson also left the scene in a friend's car. Defendant remained on the premises.

Willie Vine, Jr. heard defendant say that defendant thought Robinson had taken defendant's gun, that defendant had another gun, and that defendant would be waiting for Robinson when he came back. Defendant obtained a .22 caliber rifle from Willie Vine and soon thereafter defendant went a short distance into the woods near the house and stated that he would wait there all night if he had to in order to get his pistol back. When Willie Vine, Jr. asked defendant to come back in the house, defendant told Vine, Jr. to cut off the outside light and to be quiet because

someone was walking along the train track behind the house. After Vine, Jr. stepped back into the house and turned off the light, he heard one shot, and heard defendant say "[w]hat did you do with my gun?" Then, Vine, Jr. heard another shot. Damita Jo Lemon testified that she was in the house when she heard the first shot, that she then looked out the window and saw Freddie Robinson running from the back of the house toward the street, and that she then ran out of the house, heard Robinson say "Ah, man, you got me," heard defendant say "m----- f-----, die," and then heard a second and final shot. Vine, Jr. testified that after the second shot, defendant returned to the house and told those inside to call an ambulance and that if the police asked them anything about what happened, to say that Robinson shot at defendant first.

Robinson's body was discovered on the road in front of the Vine residence approximately two hundred feet from the house. A search of the immediate area around the body revealed no weapon of any sort. An autopsy revealed two entrance wounds on Robinson's body and tests on Robinson's hands revealed residues indicating that Robinson could have fired a gun that night. Defendant's pistol was discovered hidden underneath pine straw in the wooded area in the rear of the Vine residence. No fingerprints were found on the pistol but the pistol contained one spent cartridge.

Defendant presented no evidence.

Defendant appeals from a conviction of voluntary manslaughter.

*Attorney General Rufus L. Edmisten, by Assistant Attorney General Grayson G. Kelley, for the State.*

*B. Frank Bullock, for the defendant-appellant.*

WELLS, Judge.

In his first assignment of error, defendant contends that the trial court erred in denying his motion to dismiss the charges against him by reason of the failure of the State to begin his trial within 120 days of his arrest. In his speedy trial motion, filed and served on the State on 14 December 1979, defendant alleged that he was charged with murder and arrested on or about 14 August

1979, that he had not been indicted, that he had not been tried, that no part of the delay of his trial was attributable to defendant, and that the State, without a valid reason, had failed to accord defendant a speedy trial. Defendant's motion did not come on for hearing until 10 April 1980. In the meantime, defendant was indicted for second degree murder on 8 January 1980. At the hearing before the Honorable James H. Pou Bailey on 10 April 1980, the trial court took judicial notice of the foregoing sequence of events and that defendant's file indicated no reason for the delay between the arrest and the indictment. The State argued to the trial court that because there had been no showing by defendant that his trial was not "granted" within 120 days of the indictment, defendant's motion should be denied. The State made no effort to explain or justify the delay of trial beyond 120 days of defendant's arrest. Judge Bailey denied defendant's motion. We find no error in Judge Bailey's ruling.

G.S. 15A-701(a1) provides as follows:

Notwithstanding the provisions of G.S. 15A-701(a) the trial of a defendant charged with a criminal offense who is arrested, served with criminal process, waives an indictment or is indicted, on or after October 1, 1978, and before October 1, 1980, shall begin within the time limits specified below:

(1) Within 120 days from the date the defendant is arrested, served with criminal process, waives an indictment, or is indicted, whichever occurs last.

G.S. 15A-703, in pertinent part, provides:

If a defendant is not brought to trial within the time limits required by G.S. 15A-701 . . . , the charge shall be dismissed on motion of the defendant.

In felony cases, there are a number of events which may start the running of the 120 day period provided for in G.S. 15A-701(a1)(1). *See* Chapter 15A, Article 17, Criminal Process. The General Assembly revised the Speedy Trial Act in the 1977 Session. *See* Chapter 787 of the 1977 Session Laws. The original version of the Bill which contained the revisal, H.B. 718, filed 4 April 1977, contained a provision that the *first* of the events enumerated in G.S. 15A-701(a1)(1) would start the running of the 120 day period. The original draft was the one recommended by the Legislative Re-

State v. Charles

search Commission in its Report to the 1977 General Assembly on Speedy Trials. The Bill was amended in Committee to provide that it would be the *last*, not the *first*, occurring of the events enumerated in G.S. 15A-701(a1)(1) which would measure the 120 days, and it was the Committee revisal which was enacted.

[1]   Recognizing that under the provisions of Chapter 15A, Article 17, Criminal Process, arrest may precede indictment or indictment may precede arrest, we believe that G.S. 15A-701(a1)(1), as finally enacted, reflects the clear intent of the General Assembly that it is the *last* occurring of these events which will trigger the running of the 120 day waiting period.[1] In the case now before us, the last occurring event in the criminal process chain was the return of the Bill of Indictment by the Grand Jury on 8 January 1980. Defendant's trial began on 10 April 1980, well within 120 days of the return of the indictment against him. *Compare State v. Young*, 302 N.C. 385, 388, 275 S.E. 2d 429, 432 (1981). This assignment is overruled.

[2]   Defendant's next assignment of error concerns the testimony of Damita Jo Lemon. Prior to recess, Lemon had testified that after hearing the first shot, she heard the voices of Robinson and defendant. Although she was not specific about what was said, Lemon did remember that defendant's voice used profanity. After the recess, Lemon testified on direct examination that after the first shot she heard Robinson say, "man, you got me," and then heard defendant say "m----- f-----, die." Defendant contends that the trial judge erred by permitting the State to impeach its own witness. The State, however, was clearly not seeking to introduce prior inconsistent statements or to impeach Lemon's credibility and therefore his assignment of error is without merit. *Compare State v. Berry*, 295 N.C. 534, 537-38, 246 S.E. 2d 758, 760-61 (1978).

Defendant also assigns error to the admission, over objection, of Lemon's statement on re-direct that when defendant returned to the house after the shooting, defendant told the occupants that if the police asked who shot first, they should say Freddie Robinson. Lemon did not testify to this on direct ex-

---

1. Our holding recognizes, of course, that there are other events in the chain of criminal process in felony cases which may control.

amination, and defendant contends that the State was improperly allowed to produce new evidence on re-direct examination. During cross-examination, while Lemon was in the process of relating the statements defendant made when he entered Lemon's house after the shooting, counsel for defendant interrupted her in the middle of a sentence and requested that she confine her answer to what defendant said about calling an ambulance. On re-direct, counsel for the State asked her to complete her recollection of what defendant said when he entered the house. She then stated that after asking those present to call an ambulance, defendant said that if the police asked who shot first, "say that Freddie shot at him." It was within the discretion of the trial judge to allow the witness on re-direct to clarify testimony elicited on cross-examination. *See* 1 Stansbury's N.C. Evidence § 36, at 109 (Brandis rev. 1973). This assignment of error is overruled.

[3] Defendant next assigns error to the admission of the corroborative testimony of Detective Clarence Gooch. Gooch's testimony concerned conversations he had with Willie Vine, Jr., held shortly after 14 August 1979 pursuant to Gooch's investigation of the shooting. Although for the most part consistent, what Vine told Gooch differed in some respects from Vine's testimony on direct examination, *e.g.* Vine told Gooch he heard four rather than two shots, and Vine told Gooch that after the shots he heard defendant say "I got you," and heard Robinson say, "Oh, you got me." "[I]f the testimony offered in corroboration is generally consistent with the witness's testimony, slight variations will not render it inadmissible. Such variations affect only the credibility of the evidence which is always for the jury." *State v. Warren,* 289 N.C. 551, 557, 223 S.E. 2d 317, 321 (1976). The variations were slight in this case and defendant has failed to demonstrate any prejudicial error and this assignment of error is overruled.

[4] Defendant next asserts that the trial judge improperly expressed an opinion during the instructions to the jury. G.S. 15A-1232. In summarizing the testimony of Lemon, the trial judge stated: "She also reported that she heard some vulgarity that I see no need to repeat for you. I didn't enjoy hearing the vulgarity under any circumstances, but these witnesses were telling you what they say they heard." Considered in the context in which they were made, these statements by the trial judge could not reasonably be considered as an expression of opinion on the

evidence in the trial. The trial judge merely declined to repeat the profanity and then explained his omission. This assignment is overruled.

Defendant's final assignment of error concerns the trial judge's denials of defendant's motions to set aside the verdict as being contrary to the evidence, for a new trial, and for a mistrial. A motion to set aside the verdict as being against the weight of the evidence is addressed to the discretion of the trial court, and is not reviewable on appeal in the absence of abuse of discretion. There was more than sufficient evidence to take the case against defendant to the jury; hence, no abuse of discretion has been shown. *State v. Hamm*, 299 N.C. 519, 523, 263 S.E. 2d 556, 559 (1980). Defendant's motions for a new trial and for a mistrial are not supported by any showing of prejudicial error in the trial. These assignments of error are overruled.

Defendant received a trial free from prejudicial error.

No error.

Judges HEDRICK and MARTIN (H. C.) concur.