STATE OF NORTH CAROLINA v. DANNY RAY THOMAS

No. 8228SC1136

(Filed 17 May 1983)

**Criminal Law § 90— State's witness improperly declared hostile**

 In an armed robbery prosecution, the trial court erred in declaring the State's witness hostile and allowing the State to impeach him with a prior inconsistent statement since the judge did not determine after voir dire that the State had been misled, surprised or entrapped to its prejudice but rather the record disclosed that the trial judge declared the witness hostile because of the witness's inability to "stick by his story one way or the other." G.S. 15A-1443.

APPEAL by defendant from *Burroughs, Judge.* Judgment entered 27 May 1982 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 14 April 1983.

Defendant was indicted for attempted armed robbery and assault with a deadly weapon with intent to kill inflicting serious injury. Both charges arose out of an attempted robbery of Jordan's Food Store in Buncombe County on 16 January 1982. Defendant was convicted by a jury of attempted armed robbery, for which he received a sentence of twenty years, and assault with a deadly weapon inflicting serious injury, for which he received a consecutive sentence of five years. Defendant appeals.

*Attorney General Rufus L. Edmisten by Assistant Attorney General Michael Rivers Morgan for the State.*

*Public Defender J. Robert Hufstader for defendant appellant.*

BRASWELL, Judge.

Defendant first argues that the court committed reversible error by declaring one of State's witnesses a hostile witness and subsequently allowing the State to impeach and cross-examine its own witness. We agree with defendant on this issue; therefore, he is awarded a new trial.

State's witness James B. Carpenter testified that he had seen the two codefendants on the morning of the robbery of Jordan's Food Store. During their conversation, the two defendants asked Carpenter if he had any money they could borrow. Carpenter

went on to state that he had gone to Jordan's Store shortly after it had been robbed that night and had talked to Deputy Randy Moss. Carpenter stated that all he told Deputy Moss was that he had seen the two defendants that morning and run them off from his house. After the District Attorney, Mr. Freeman, made several attempts to get Carpenter to elaborate on what he had told Deputy Moss, Freeman reminded Carpenter that Moss had made a written report of the conversation. Carpenter looked at the written report but stated that only parts of it were true. At this point the judge conducted a *voir dire* hearing which began as follows:

"COURT: Now, what's the problem, Mr. Freeman?

MR. FREEMAN: If Your Honor please, that statement given to Randy Moss contains additional statements which this Defendant related — excuse me — which this witness related the two Defendants told him; more specifically, that the two subjects told him that they needed money and wanted to know if the place where he worked held any money there. He told them no, and then they told him that they were going to have to hit a store to get some money. I talked with him yesterday afternoon in the presence of several officers, after he was brought in after failing to appear as subpoenaed Monday morning. At that time he indicated in my presence and in the presence of the other officers that those statements were true and correct. And then I learned before lunch that he has lost his memory. I'm trying to refresh it."

In response to questioning from the court and counsel, Carpenter stated that he had been told by Deputy Moss and another officer before lunch that day that "if I didn't start remembering what they had wrote down here, that I could be in the same cell with [the two defendants] tonight." Mr. Freeman read Moss's written report to Carpenter, and Carpenter told the court that he did not remember the defendants asking him if the place where he worked had any money or their stating that they would have to hit a store to get some money.

The Court then concluded the *voir dire* as follows:

"COURT: I'm going to find this man is a hostile witness and let the State cross-examine him about his earlier statement.

It seems to me that he approached the police on the very night that this happened when the events were fresh in his memory and related to the police a series of circumstances that I find no reason to—for the police to alter, and it is my finding that the information he gave to the police on January 16, 1982, was fresh at the time he gave it, and for reasons known only to himself, he doesn't wish to substantiate that statement at the present time, and I feel he is a hostile witness to the State and failed to honor a subpoena. He had to be sent for. He admitted that the statement was correct as late as yesterday, and he has denied or repudiated the statement as late as today. *So with this particular witness not being able to stick by his story one way or the other,* I'm going to let the State cross-examine him about the information he gave to the police earlier." (Emphasis added.)

The State then proceeded to cross-examine Carpenter and impeach him by using the statement written by Officer Moss.

"Although not without criticism, it remains the rule *in criminal cases* in North Carolina that the district attorney may not impeach a State's witness by evidence that his character is bad or that he has made prior statements inconsistent with or contradictory to his testimony." *State v. Smith,* 289 N.C. 143, 156, 221 S.E. 2d 247, 255 (1976). The exception to this rule is that the State may impeach its own witness when it has been misled, surprised or entrapped to its prejudice. *State v. Moore,* 300 N.C. 694, 698, 268 S.E. 2d 196, 200 (1980).

District Attorney Freeman stated during *voir dire* that he had learned before lunch and before Carpenter was called to testify that Carpenter had "lost his memory." Therefore, there can be no doubt that prior to calling him as a witness, Freeman had substantial reason to believe that Carpenter would repudiate part of his previous statement to Moss or claim loss of memory if called to testify.

"Where the prosecuting attorney knows at the time the witness is called that he has retracted or disavowed his statement, or has reason to believe that he will do so if called upon to testify, he will not be permitted to impeach the witness. He must first show that he has been genuinely 'surprised or taken unawares' by testimony which differed in

material respects from the witness's prior statements, which he had no reason to assume the witness would repudiate." (Citations omitted.)

*State v. Pope,* 287 N.C. 505, 514, 215 S.E. 2d 139, 146 (1975).

Here, the trial judge declared Carpenter a hostile witness and allowed the State to impeach him with the prior inconsistent statement written down by Deputy Moss. The judge did not determine after *voir dire* that the State had been misled, surprised or entrapped to its prejudice. The record discloses that the trial judge declared Carpenter a hostile witness because of Carpenter's inability to "stick by his story one way or the other." Under these circumstances, it was error for the court to declare Carpenter a hostile witness in violation of the anti-impeachment rule as set forth in *Smith* and *Pope.*

We hold that this error was prejudicial to defendant, considering the nature of the identification testimony of the one eyewitness to the robbery, Mary Jo Holcombe. The record discloses that there were several factors which may have tended to discredit Ms. Holcombe's identification of defendants: the impairment of her vision due to the blood running from her head injury into her eyes; her failure to wear prescription eyeglasses; and her vague description of the two men immediately following the robbery and assault. Therefore, since Carpenter's statement to Deputy Moss concerning defendant's alleged plan to rob a store tended to corroborate Ms. Holcombe's identification and to establish defendant's intent to commit a robbery, there is a reasonable possibility that without this testimony a different result would have been reached at trial. *See State v. Moore, supra;* G.S. 15A-1443. For this reason, we hold that defendant is entitled to a new trial.

Defendant's remaining arguments concern errors allegedly made by the court in the sentencing hearing. These assignments need not be discussed since they are unlikely to recur upon retrial in light of the Fair Sentencing Act guidelines set out in the recent North Carolina Supreme Court case, *State v. Ahearn,* --- N.C. ---, 300 S.E. 2d 689 (1983).

New trial.

Judges WEBB and WHICHARD concur.