STATE OF NORTH CAROLINA v. CHAMUAL LARRY GREENLEE

No. 8428SC220

(Filed 15 January 1985)

**Criminal Law § 90— witness's prior inconsistent statement—use by state to impeach own witness improper**

    The trial court erred in permitting the State to introduce its witness's prior inconsistent statement into evidence and the jury to view it, since the court did not limit admission of the written statement to those parts corroborating the witness's testimony; the prosecuting attorney could not legitimately claim surprise or entrapment because the witness's testimony the day before had not conformed to her prior statement to police; and identification of the perpetrator of the crime was the crucial issue in the case, but introduction of the witness's written statement was clearly designed for the prohibited purpose of discrediting her previous testimony which would have tended to exonerate defendant.

APPEAL by defendant from *Cornelius, Judge.* Judgment entered 13 October 1983 in BUNCOMBE County Superior Court. Heard in the Court of Appeals 4 December 1984.

Defendant was tried and found guilty of first degree burglary and felonious larceny. The state proffered evidence which tended to show that during the evening of 7 January 1983 defendant, Richard Simmons, Regina Moseley, and Artie Vernon met socially at the House of Soul in Asheville, North Carolina. During the morning hours of 8 January 1983, they went to the Interstate Motel. Simmons rented a room; the females went to the room first; and the men entered later. Upon entering, Simmons handed defendant a jacket. A pair of boots, billfold, some pants, and a

bottle of whiskey were in the room. Moseley heard Simmons say that he had obtained these items from another room occupied by whites. Moseley requested to be taken home, and she left with the defendant, who did not take any items from the room.

Defendant voluntarily surrendered himself to investigating officers on 10 January 1983. On the following day investigating officers searched defendant's home and found a brown Wrangler jacket, with the name "Stoker" written in the sleeve, that had been reported stolen from the motel.

Four occupants of room 117 of the Interstate Motel testified that they had returned to their room at approximately 3:30 a.m. on 8 January 1983, locked the door, went to sleep, and awoke at approximately 8:00 a.m. They discovered various personal items missing, including a brown Wrangler jacket, billfold, knife, whiskey, and a down vest. Scott Stoker, one of the occupants, identified the brown jacket found in defendant's home as his.

Officer Victor Sloan testified that several days after defendant's arrest, the latter voluntarily came into the police department. He told officers that he had purchased the jacket confiscated and had a receipt for it. Defendant did not produce the receipt.

Defendant offered evidence which tended to show that he arrived home at approximately 1:30 a.m. on 8 January 1983 and remained there throughout the night. Richard Simmons came to his house later in the day with a coat and he left it with the defendant. The defendant placed the coat in the closet from which the police removed it during their search.

*Attorney General Rufus L. Edmisten, by Elisha H. Bunting, Jr., for the State.*

*Assistant Public Defender Lawrence C. Stoker for defendant.*

WELLS, Judge.

Defendant brings forward three assignments of error: (1) the state was permitted to improperly impeach its own witness by a prior inconsistent statement; (2) the state was permitted to improperly introduce the prior inconsistent statement into evidence; and (3) the trial court erred in denying defendant's motions for ap-

propriate relief. We agree that the state improperly impeached its own witness and order a new trial.

At the time of defendant's trial, the general rule in criminal trials was that the state may not impeach its own witness by prior inconsistent statements or any evidence of the witness's bad character. *E.g., State v. Cope*, 309 N.C. 47, 305 S.E. 2d 676 (1983); *State v. Taylor*, 88 N.C. 694 (1883); *State v. Gilliam*, 71 N.C. App. 83, 321 S.E. 2d 553 (1984); 1 H. Brandis, N.C. Evidence § 40 (2d rev. ed. 1982) (but forcefully criticizing the anti-impeachment rule); *but cf. Chambers v. Mississippi*, 410 U.S. 284 (1973) (questioning the rule in context of defendant's due process rights); *State v. Alford*, 289 N.C. 372, 222 S.E. 2d 222, *death sentence vacated, Carter v. North Carolina*, 429 U.S. 809 (1976). The anti-impeachment rule has never been held applicable in situations where use of the prior inconsistent statement or bad character evidence was offered for purposes other than impeachment of the witness. *E.g., State v. Williams*, 304 N.C. 394, 284 S.E. 2d 437 (1981), *cert. denied*, 456 U.S. 932 (1982) (clarification of witnesses' testimony); *State v. Oxendine*, 303 N.C. 235, 278 S.E. 2d 200 (1981) (corroboration); *State v. Berry*, 295 N.C. 534, 246 S.E. 2d 758 (1978) (clarification of statement by witness); *State v. Tinsley*, 283 N.C. 564, 196 S.E. 2d 746 (1973) (corroboration even though minor differences with in-court testimony); *State v. Charles*, 53 N.C. App. 567, 281 S.E. 2d 438 (1981) (corroboration).

Several exceptions soften the often harsh impact of the anti-impeachment rule. First, the trial court, in its discretion, may permit the state to:

cross-examine either a hostile or an unwilling witness for the purpose of refreshing his recollection and enabling him to testify correctly. 'In so doing, the trial judge may permit the party to call the attention of the witness directly to statements made by the witness on other occasions. . . . But the trial judge offends the rule . . . if he allows a party to cross-examine his own witness solely for the purpose of proving him to be unworthy of belief.'

*State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973) (citations omitted); *see also State v. Moore*, 300 N.C. 694, 268 S.E. 2d 196 (1980).

Second, a party may impeach his own witness when that party is surprised or entrapped by the witness. In such situations the exception is not automatically invoked. The procedure and criteria for invoking the exception were outlined in *State v. Cope, supra* (relying on *State v. Pope*, 287 N.C. 505, 215 S.E. 2d 139 (1975)):

> (1) the state, by motion to the trial court, moves to impeach its witness as soon as the state is surprised or entrapped;

> (2) trial court conducts a *voir dire* to determine if the state has been surprised as a material fact contrary to what the state had a reasonable expectation to believe. There can be no surprise, entrapment, or reasonable expectation that the witness will conform his testimony to any prior statement if the state's attorney knows that the witness has retracted or repudiated his written statement or if the state's attorney has reason to believe the witness will do so. The prosecuting attorney is not required to have interviewed the witness prior to trial, even though better practice dictates this procedure.

> The surprised party must prove the prior inconsistent statement and that it was communicated to the state's attorney by the witness or his agent or investigating officers furnished the state's attorney with the witness's signed or acknowledged statement.

> The determination to permit impeachment is in the discretion of the trial court. The trial court must also determine to what extent the prior inconsistent statement may be proffered.

> (3) Even though the trial court may permit impeachment, the prior inconsistent statement is admitted for the sole purpose to explain why the witness was called. The prior inconsistent statement is not substantive evidence for any purpose.

Even if improper impeachment has occurred, an appellate court must find the impeachment to be sufficiently prejudicial so that "had the error in admitting these statements not occurred a dif-

ferent result might have been reached at trial." *State v. Cope, supra; see also State v. Peplinski,* 290 N.C. 236, 225 S.E. 2d 568, *cert. denied,* 429 U.S. 932 (1976); *State v. Moses,* 52 N.C. App. 412, 279 S.E. 2d 59, *disc. rev. denied,* 303 N.C. 318, 281 S.E. 2d 390 (1981); *compare State v. Gilliam, supra* (harmless error); *with State v. Woods,* 33 N.C. App. 252, 234 S.E. 2d 754 (1977) (prejudicial error); N.C. Gen. Stat. § 15A-1443(a) (1978).

The testimony of Regina Moseley is the focal point of this appeal. Prior to trial, she gave investigating officers a signed, handwritten, statement. The pertinent parts of the statement are:

> First of all, me and Teresa Vernon and Greenlee and we left the House of Soul. And at the time we was at the Interstate Motel. And while the 4 of us were on our way to the room and Greenlee had some pants in his hand, and he came in the room with the three of us. And Greenlee was in and out of the room about twice. . . . And I then told Greenlee to take me home, so . . . Greenlee took me home . . . Greenlee had some boots in his hand and a bottle of whiskey. . . . Billfold had $13.00 dollars in it. Greenlee had it, also two jackets. Greenlee said that the room was open and he went in.

At trial, the state called Moseley during its case-in-chief. The relevant parts of her testimony are:

> Q. . . . When he came in, what if anything did Greenlee have in his hands?
>
> A. Well, I seen the guy [Richard Simmons] hand him a jacket. He put it on the table.
>
> . . .
>
> Q. And before the other guy handed Mr. Greenlee the jacket, did Mr. Greenlee have anything in his hands, ma'am?
>
> A. No, not as I can remember.
>
> Q. I believe you talked to the officers about this on a later occasion, didn't you, ma'am?
>
> A. Yes, I had to go up there.
>
> Q. And at that time you made a statement?

A. The statement I made, I was telling what all I had seen on the table.

Q. Well, the statement you made then to the officer was true, wasn't it, ma'am?

A. Yes.

MR. STOKER: Objection.

COURT: Sustained.

Q. Ma'am, I'll ask you to look at this statement and see if it refreshes your memory.

MR. STOKER: Objection.

COURT: Overruled. What is the exhibit number?

Q. Do you remember now if Greenlee had anything in his hands when he came in?

MR. STOKER: If the Court please, we object. He's trying to impeach his own witness. We object.

COURT: Overruled.

A. I remember him having a jacket in his hand, and all I remember is what I put here that was on the table in the room at the motel.

Q. Well, you put that sentence in there, too. Do you remember that now, ma'am?

A. Not as I can remember.

. . .

Q. Did Mr. Greenlee say anything at that time, ma'am?

MR. STOKER: Objection.

COURT: Overruled.

Q. . . . I'm referring to your statement again.

A. The other guy [Richard Simmons] did. I told you his name was Richard. I heard him say something about the room, the door was open.

. . .

On redirect examination, the state continued the same line of questioning:

Q. Did you overhear a conversation between Mr. Greenlee and this Richard fellow?

MR. STOKER: Objection.

COURT: Overruled.

A. Yes, I heard Richard say that he got the stuff out of some white people's room, the door was open.

MR. STOKER: Move to strike.

COURT: Overruled. Denied. Answer.

Q. What did Mr. Greenlee say in response to that, ma'am?

A. That's all I heard. . . .

Defendant's argument that the foregoing testimony demonstrates improper impeachment is not well taken. The prosecuting attorney, realizing that the witness's in-court testimony was contradictory to her written statement, was attempting to refresh her memory. Refreshing the witness's memory by calling that person's attention to a previous statement is permitted. *State v. Anderson, supra.* Furthermore, the record reveals that the trial court sustained defense objections to those questions that appeared to be for the purpose of impeachment only.

During the second day of trial, the state recalled Moseley. Overruling repeated objections, the trial court permitted the state to introduce Moseley's prior inconsistent statement into evidence and the jury to view it. Defendant's arguments that introduction of the written statement into evidence and passing the statement to the jury improperly impeached Moseley are well taken.

First, a fair reading of the transcript and Moseley's written statement unmistakably demonstrates that the prior written statement impeached Moseley's in-court testimony in several respects, the most important being that Richard Simmons, not defendant Greenlee, implicated himself by stating that he had "got the stuff" from another room occupied by whites. We agree

with the state's contention that parts of Moseley's written state-
ment corroborated some of her in-court testimony and would have
been admissible even though there were slight variations in the
two versions. *State v. Oxendine, supra; State v. Moore, supra.*
The trial court did not, however, limit admission of the written
statement to those parts corroborating her testimony.

Second, the prosecuting attorney could not legitimately claim
surprise or entrapment on the second day of the trial for
Moseley's testimony of the previous day. In *State v. Pope, supra,*
the court emphatically stated that "[w]here the prosecuting at-
torney knows at the time the witness is called that he has re-
tracted or disavowed his statement, or has reason to believe that
he will do so if called . . . he will not be permitted to impeach the
witness." The facts in *Anderson* are analogous to the facts before
us in this case. In *Anderson* the state's attorney learned on *voir
dire* that its witness had either forgotten certain material facts or
had consciously altered testimony. On the same day, the witness
was called at trial and asked the same questions as propounded
on *voir dire*. The court held that the prosecuting attorney was
not surprised or entrapped. *State v. Anderson, supra; see also
State v. Thomas,* 62 N.C. App. 304, 302 S.E. 2d 816 (1983) (state's
attorney learned witness lost memory before lunch recess).

Third, Moseley's written statement impeaching her in-court
testimony was prejudicial because identification of the perpe-
trator of the crime was the crucial issue in the case. Introduction
of Moseley's written statement was clearly designed to discredit
her previous testimony which would have tended to exonerate de-
fendant and to implicate defendant instead. The introduction of
the statement is clearly prohibited for this purpose. *State v.
Moore, supra; State v. Smith,* 289 N.C. 143, 221 S.E. 2d 247 (1976),
*appeal after remand,* 291 N.C. 505, 231 S.E. 2d 663 (1977). There
were no witnesses to the burglary and larceny. The most signifi-
cant evidence linking defendant to the crime, other than
Moseley's written statement and defendant's presence at the
crime scene, was the discovery of the stolen jacket in his home.
Defendant's wife testified, however, that defendant was at home
when the crime was committed and that Richard Simmons
brought the jacket to defendant's home. We hold that had the er-
ror in admitting Moseley's written statement not occurred the
jury might have reached a different result.

It is unnecessary to discuss defendant's other assignments of error. For the reasons stated, there must be a

New trial.

Judges ARNOLD and PHILLIPS concur.