769 A.2d 931

**Jean Bernard GERMAIN**

v.

**STATE of Maryland.**

**No. 82, Sept. Term, 2000.**

Court of Appeals of Maryland.

April 10, 2001.

514

Claudia A. Cortese, Assistant Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Zoe M. Gillen, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

CATHELL, Judge.

Petitioner, Jean Bernard Germain, was convicted by a jury in the Circuit Court for Anne Arundel County of attempted second degree murder, first degree assault, reckless endangerment, and carrying a weapon with intent to

injure. Petitioner appealed to the Court of Special Appeals. In an unreported opinion filed June 12, 2000, the Court of Special Appeals affirmed his conviction.[1] Petitioner presents one question to this Court, for which we granted certiorari:

Did the Court of Special Appeals err in not reversing Petitioner's conviction on the ground that the trial court precluded Petitioner from using a key State witness's Pre–Sentence Investigation (PSI) for any reason including to refresh the witness's recollection, on the ground that PSIs are confidential and privileged?

We answer petitioner's question in the affirmative. We hold that the trial court should not have precluded petitioner from using a key State witness's PSI to refresh that witness's recollection. The confidentiality of a PSI is not absolute. The showing of a PSI to a witness who has a right to see it, in order to refresh that witness's recollection, is not prohibited by statute. Accordingly, we reverse the decision of the Court of Special Appeals and remand with instructions to reverse the judgment of the Circuit Court for Anne Arundel County and remand the case to that court for a new trial.

## I. Facts

Petitioner and Mr. John Campbell (Campbell), two individuals incarcerated in the State of Maryland, shared cell 205 in D building, Bravo Wing of the Maryland House of Corrections Annex located in Jessup, Maryland. Sergeant Carlton L. Gibson, the officer in charge of the housing unit, testified that in early August 1998,[2] petitioner and two other individuals had

---

1. The Court of Special Appeals addressed two questions:
 1. Was the evidence sufficient to support [Germain's] convictions, including specifically his conviction for attempted second degree murder?
 2. Did the trial court err in preventing [Germain] from refreshing the victim's recollection with statements in his pre-sentence investigation report?
 The Court of Special Appeals held that the first question was not properly preserved and answered "no" to the second question.

2. It must have actually been in late July of 1998 as the fight between the two inmates occurred on August 1, 1998.

just come off of temporary housing into the D Building. Petitioner was given a choice of three bed spaces in which to move. Petitioner requested that he not be moved into a cell with anyone who was a smoker. After initially refusing the placement in the cell with Campbell, petitioner changed his mind and accepted housing in that cell. His decision to accept the housing was made, at least in part, on the assurances by Sergeant Gibson that they would move him out of the cell after a short period of time.

Petitioner testified that soon thereafter he made numerous requests to be moved from the cell he shared with Campbell because Campbell "smoke[d] all the time," was HIV positive, and had sexually propositioned petitioner. However, Sergeant Gibson testified that "[t]he only reason I had was—the only reason that was brought to my attention was the smoking. Because [petitioner] said—he stated that he had asthma and he couldn't move in with anybody that smoked cigarettes." Additionally, when asked whether petitioner ever complained about unwanted sexual advances by his cell mate, Sergeant Gibson responded that "[s]exual advances [were] never brought to my attention."

At approximately 11:25 p.m. on August 1, 1998, after being cell-mates for approximately two weeks, a fight broke out between the two inmates. The issue at petitioner's trial for this assault was not whether the assault occurred but whether petitioner was acting in self-defense. During the trial, the defense counsel argued that petitioner was acting in self-defense by warding off an unwanted, forced homosexual assault upon him by Campbell, who petitioner believed to be a homosexual, a convicted sex offender, and a HIV positive individual, while the State contended that the assault was simply an unprovoked attack by petitioner. The two inmates' versions of the assault are drastically different.

Campbell testified that at approximately 11:25 p.m., he walked to the door of the cell to smoke a cigarette. Before Campbell could light the cigarette, petitioner jumped out of bed and began hitting him in the back of the head. Initially,

Campbell thought that petitioner was only punching him, but when he saw blood running down his face, he realized he was being stabbed. Campbell called out for a correctional officer. Officer Barbara Leonard responded to his call for help, called for a 10–10,[3] and waited for additional correctional officers to arrive. During this time, petitioner "[c]ontinued stabbing [Campbell] in the neck, the shoulder, and down the right side of [Campbell's] back." Not until Officer Orice Custis arrived and sprayed pepper spray in the cell did petitioner stop attacking Campbell. Campbell testified and the medical report confirmed that he had "104 stab wounds."

Contrastingly, petitioner maintained that on the night in question, he was acting in self-defense. He testified that Campbell, whom he believed was a homosexual, a convicted sex offender, and HIV positive, "tried to approach [him] sexually." Petitioner testified that "[Campbell] approached me about a sexual thing, and I told him that I was not a homosexual. And after I refused, he approached me. He tried to attack me." Petitioner explained that while he was laying on his bed and Campbell was standing in the cell, Campbell began touching him and fondling him in a sexual manner. Petitioner testified that:

> Mr. Campbell told me that he was a known sex offender to me. And I knew that he had AIDS. He was approaching me sexually, so that was an assault on my life. He wanted to have sex with me. I refused. He approached me, touching me. When I jumped down to try to get him to stop, he attacked me. And we fought.

Petitioner then grabbed a knife, which he kept for protection, from its hiding place by the toilet and used it in his fight with Campbell.

Petitioner was seen hitting and stabbing Campbell by two correctional officers who responded to Campbell's calls. Officer Barbara Leonard testified that at approximately 11:25

---

**3.** "10–10" is a numeric code used within the Maryland House of Corrections Annex meaning that there is a fight between inmates.

p.m. she heard someone calling "CO, CO." [4] Upon arriving at cell 205, she found that Campbell "was bent down at the door and [petitioner] ... was just stabbing him repeatedly." She instructed petitioner to stop striking Campbell. When he ignored her, Officer Leonard "called the code" by reporting a "10–10 on delta bravo," indicating that there was a fight between inmates on the bravo wing of Building D. Officer Orice Custis responded to her call and upon arriving at cell 205, ordered petitioner to stop striking Campbell.

On the evening that the fight broke out between the two inmates, Officer Custis was the Officer in Charge of a housing unit in Building D. He testified that when he arrived at cell 205 he saw Campbell "in the fetal position right by the door. There was another inmate [petitioner] on top of him stabbing him." Officer Custis instructed petitioner to stop striking Campbell. When petitioner ignored him, Officer Custis went to the control center, got a chemical agent, ran back to cell 205,[5] and ordered petitioner to stop striking Campbell. When petitioner continued to ignore Officer Custis's commands, Officer Custis "sprayed a short burst of chemical agent into the cell" through a small slot in the cell door at which time petitioner "dropped the weapon down and ran to the back of the cell." Officer Custis ordered petitioner to back up to the cell door to be handcuffed but he refused to cooperate. The two officers waited for more officers to arrive to the scene before they opened the door, handcuffed both petitioner and Campbell, and took them to Medical. Officer Leonard testified that the fight continued for approximately three minutes from the time she first responded to Campbell's cries for help. She also testified that she did not witness how the fight started.

---

4. "CO" is short for "correctional officer."

5. The officers testified that cell 205 was located near the control room. The distance was described as "about six, eight feet" and "about five seconds away."

## II. The Trial

As we discussed, *supra*, defense counsel's theory of the case was that petitioner was acting in self defense by warding off an unwanted, forced sexual assault upon him by Campbell, who petitioner believed to be a homosexual, a convicted sex offender, and a HIV positive individual. On cross-examination, Campbell denied being a homosexual and stated that if he made any sexual advances toward petitioner while they were cell mates, that he did not remember making them. He further testified on cross-examination that, although he remembered pleading guilty to two second degree sex offenses and he was serving a forty-year sentence, he did not recall the specifics of the charges. It was clear that whether Campbell was a person who made sexual attacks against members of the same sex was proffered as material to the credibility of both Campbell and the defendant. On recross-examination, defense counsel again tried to elicit the specifics behind Campbell's convictions for two second degree and one third degree sexual offense:

BY MR. GUNNING: [6]

Q. Mr. Campbell, the victim of your sexual offense was an 11–year–old boy; is that correct?

MR. PAONE: Objection.

MR. GUNNING: Your Honor, may we approach?

THE COURT: No. I am going to overrule. He can answer the question. You opened the door. Go ahead.

THE WITNESS: I don't remember.

BY MR. GUNNING:

Q. You don't recall.

A. I don't remember nothing.

Q. You don't recall pleading guilty to sodomizing an 11–year–old boy.

---

6. At trial, Mr. Gunning was petitioner's defense counsel and Mr. Paone represented the State.

A. I remember pleading guilty to second degree sex offense. That's all I remember.

Q. And you don't recall the second second degree sex offense with the same 11–year–old boy as part of that plea.

A. No. I remember pleading guilty to two second degree sex offenses. That was all I remember.

Q. And you also pled guilty to a third degree sex offense which entailed fondling the penis of that little boy, correct?

. . . .

THE WITNESS: No.

. . . .

Q. And you just don't remember any of that.

A. I don't remember none of it.

Shortly thereafter, the following discussion took place at a bench conference:

MR. PAONE: Your Honor, defense counsel has just shown me a copy of what appears to be a PSI for the defendant.[7] I can only assume he is going to cross-examine him about the contents of that PSI. I am going to object before we get into it.

THE COURT: What—

MR. GUNNING: Initially I am going to use it to refresh his recollection.

MR. PAONE: A PSI is confidential.

THE COURT: How—

MR. GUNNING: That doesn't mean I can't use it to refresh his recollection.

THE COURT: This report is for official Court use only. It is saying here it is confidential and protected. Where did you get this?

MR. GUNNING: Through subpoena.

MR. PAONE: His base file.

---

**7.** It was a PSI in respect to the witness, Campbell, not the defendant, Germain.

THE COURT: I think it is confidential. It says this report—public inspection—

MR. GUNNING: All that means is that I can't go into a courthouse and say give me the PSI for this defendant.

THE COURT: Well, you did.

MR. GUNNING: But now that I have gotten this PSI, I should be able to use the information in there to try to refresh his recollection.

THE COURT: He has already—so I am going to sustain his objection. You have it on the record—

MR. GUNNING: I could proffer to the Court that this document—he admitted to—sexual offenses to an 11–year-old boy, and one would be by sodomy and the other one would be by having oral sex with him. He also fondled him. This information will be mainly to refresh his recollection.

THE COURT: Well—there is no need in going into the rest of it, for several reasons. One, it is confidential; two, it is already on—and the only purpose of the convictions are to show—

MR. GUNNING: But, Your Honor, now we have the issue of credibility where he says he is not a homosexual. And if you . . . sodomize an 11–year-old boy—

THE COURT: If you have a conviction, you can tell them the conviction.

MR. PAONE: Your Honor, I am going to renew my objection to all references to the specific facts of any case. I can't get into them on my cross-examination, and neither can defense counsel.

Your Honor, under these circumstances there are many reasons, psychological, psychiatric, any number of reasons, why the [witness] may not remember what exactly happened on these occasions. The clear implication to the jury has been that—there has also been no indication that [petitioner] knows any of the facts of these cases and therefore knows to be fearful of them.

It is grossly unfair. The State is not allowed to go into the facts of any convictions [petitioner] may have when he

takes the stand. I think the law is very clear that when it comes to credibility we have the conviction and the conviction alone. And that goes for both sides, the State and the defense.[8]

THE COURT: I—it is clear that this is a confidential document, and as part—:

The record indicates that at this point the bench conference ended.

## III. Discussion

### a. The Confidential Nature of a PSI is Not Absolute

 The question before us is simply whether the trial court erred in refusing to permit petitioner's defense counsel to use Campbell's PSI to attempt to refresh his recollection on the sole basis that PSI's are confidential. It is helpful to our analysis to review the nature of PSIs and their role in the criminal justice process. A "pre-sentence investigation" is an "[i]nvestigation of the relevant background of a convicted offender, usually conducted by a probation officer attached to a court, designed to act as a sentencing guide for the sentencing judge." [9] *Black's Law Dictionary* 1184 (6th ed.1990); *see*

---

8. The State failed to distinguish between the restrictions that might exist, in respect to the facts surrounding a defendant's past criminal record, when a defendant chooses to take the stand, and the use of a witness's PSI by a defendant to impeach the testimony of a State witness in a criminal case.

9. *Black's Law Dictionary* 1184 (6th ed.1990) also provides the following definition of "pre-sentence report":

The report prepared from the presentence investigation, which is designed to assist the judge in passing sentence on a convicted defendant. Presentence reports vary in scope and focus, but typically contain at least the following items: (1) complete description of the situation surrounding the criminal activity; (2) offender's educational background; (3) offender's employment background; (4) offender's social history; (5) residence history of the offender; (6) offender's medical history; (7) information about environment to which the offender will return; (8) information about any resources available to assist the offender; (9) probation officer's view of the offender's motivations and ambitions; (10) full description of the defendant's criminal record; and, (11) recommendation as to disposition.

*also* 18 U.S.C.S. § 3552 (Presentence reports); Fed.R.Crim.P. 32(b) (Presentence Investigation and Report). Generally, a PSI is a tool offered to the sentencing court to assist it in reaching its goal of individualizing the sentence "to fit 'the offender and not merely the crime.' " *Smith v. State*, 308 Md. 162, 167, 517 A.2d 1081, 1084 (1986) (quoting *Williams v. New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 1083, 93 L.Ed. 1337 (1949)). "The principal function of the presentence report is to assist the court in determining the appropriate sentence." *United States v. Charmer Indus. Inc.*, 711 F.2d 1164, 1170 (2d Cir.1983).

Because a PSI is a tool generally utilized by a sentencing judge, the circumstances, which present themselves in the case *sub judice*, are unusual. In this case, the State's key witness, Campbell, was a convicted sex offender. During cross-examination and recross-examination, Campbell claimed that he could not remember the specifics of the crimes for which he had been convicted. Defense counsel, in an effort to strengthen petitioner's testimony that Campbell had been making unwanted sexual advances, fondling him, and sexually attacking him, attempted to utilize a PSI that was apparently prepared in respect to Campbell's sentencing on his convictions. Defense counsel received the PSI through subpoena and was attempting to use the PSI to refresh Campbell's memory as to the nature of his past convictions after Campbell asserted that he could not remember.

We continue our discussion with an analysis of the relevant statutes. Maryland Code (1999), section 6–112 of the Correctional Services Article [10] provides:

> **§ 6–112. Presentence investigation report; other investigations and probationary services.**
>
> (a) *In general.—*
>
> . . . .

---

[10]. Any reference to section 6–112 is a reference to Maryland Code (1999), section 6–112 of the Correctional Services Article.

(2) *Except on court order*, a presentence investigation report is confidential and is not available for public inspection.[11][Emphasis added.]

As the wording of section 6–112 clearly indicates, the confidentiality of a PSI is not absolute. It is confidential in that it is not available for general "public inspection," *except on an order of a court*. It does not specifically prohibit the use of PSIs in official court proceedings—it is primarily designed to limit "public inspections." [12]

---

**11.** Section 6–112(a)(3) lists those people and organizations that can receive a PSI upon request. It provides:

(3) On request, a presentence investigation report shall be made available to:
(i) the defendant;
(ii) the defendant's attorney;
(iii) the State's Attorney;
(iv) a correctional facility;
(v) a parole, probation, or pretrial release official of this State, any other state, or the United States;
(vi) a public or private mental health facility located in this State or any other state if the individual who is the subject of the report has been committed, or is being evaluated for commitment, to the facility for treatment as a condition of probation; or
(vii) a community substance abuse treatment provider located in this State or any other state if the individual who is the subject of the report will be treated or evaluated for treatment by the provider as a condition of probation.

The confidentiality of PSIs is also noted in Maryland Rule 4–341, titled Sentencing—Presentence Investigation, which provides:

Before imposing a sentence, if required by law the court shall, and in other cases may, order a presentence investigation and report. A copy of the report, including any recommendation to the court, shall be mailed or otherwise delivered to the defendant or counsel and to the State's Attorney in sufficient time before sentencing to afford a reasonable opportunity for the parties to investigate the information in the report. The presentence report, including any recommendation to the court, is not a public record and shall be kept confidential as provided in Code, Correctional Services Article, § 6–112.

**12.** During recodification, section 6–112 was moved from Maryland Code (1957, 1997 Repl.Vol.), Article 41, section 4–609 into the newly created Correctional Services Article by 1999 Maryland Laws, Chapter 54 "without substantive change." Prior to this recodification, section 4–609(b) stated in relevant part, "[t]he presentence reports are confidential and not available for public inspection *except upon court order.*" (emphasis added). This language clearly reflects the Legislature's intent to make PSIs confidential with respect to "public inspections."

■ Some of the underlying purposes behind the PSI confidentiality requirement include: (1) to encourage individuals, including a defendant, who have relevant information to provide it candidly with the assurance of confidentiality, *see United States v. Greathouse,* 484 F.2d 805, 807 (1973); *United States v. Evans,* 454 F.2d 813, 820 (1972); (2) to consider the privacy interests of the victims and their families, *see Halacy v. Steen,* 670 A.2d 1371, 1374 (Me.1996); (3) to consider the privacy interests of the defendant, *see United States v. Corbitt,* 879 F.2d 224, 236 (7th Cir.1989), *cert. denied,* 502 U.S. 823, 112 S.Ct. 86, 116 L.Ed.2d 58 (1991); (4) to protect the anonymity of confidential sources, *see United States v. Huckaby,* 43 F.3d 135, 138 (5th Cir.1995); and (5) to consider that the report may include irrelevant and unsupported information, *see Halacy,* 670 A.2d at 1374. We recognize that there are numerous compelling interests served by preserving the confidentiality of PSIs from "public inspection." [13]

■ These valid public policy justifications for confidentiality usually factor heavily against *out-of-court* disclosures to any party not involved in the sentencing or rehabilitation of the subject of the PSI. The United States Supreme Court stated in *United States Department of Justice v. Julian,* 486 U.S. 1, 108 S.Ct. 1606, 100 L.Ed.2d 1 (1988):

> [T]he courts have been very reluctant to give *third parties* access to the presentence investigation report prepared for

---

This language was first added by 1972 Maryland Laws, Chapter 532. Prior to 1972, the correlating statute did not include language concerning presentencing reports or their confidentiality from "public inspection."

**13.** For a general discussion on the underlying purposes behind PSI confidentiality, *see Baltimore Sun v. Thanos,* 92 Md.App. 227, 236–37, 607 A.2d 565, 569–70 (1992) in which a newspaper sought to gain access to a PSI for possible use in articles to be published to the general public. In *Thanos,* the Court of Special Appeals noted "[c]learly *'publication* of the contents of a presentence report [to third persons] would tend to discourage full disclosure' to the sentencer from its best sources...." *Id.* at 237, 607 A.2d at 570 (emphasis added) (alteration in original). In the case at bar, actual publication to the general public was never an issue.

some other individual or individuals. As the Government points out, one reason for this is the fear that disclosure of the reports will have a chilling effect on the willingness of various individuals to contribute information that will be incorporated into the report. A second reason is the need to protect the confidentiality of the information contained in the report. Accordingly, the courts have typically required some showing of special need before they will allow a third party to obtain a copy of a presentence report. [Citations omitted.]

*Id.* at 12, 108 S.Ct. at 1613, 100 L.Ed.2d 1; *see Charmer Indus.*, 711 F.2d at 1171 (noting that "[i]n order to ensure the availability of as much information as possible to assist in presentencing, the courts have generally determined that presentencing reports should be held confidential.") [14]

■ However, as we discussed, *supra*, despite the justifications for keeping a PSI confidential in respect to "public inspection" (which was not the use petitioner proposed in the case at bar), the confidentiality of a PSI even then is not absolute. Section 6–112(a)(2) plainly states that a PSI is

---

14. In the case at bar, petitioner's attorney received Campbell's PSI via subpoena. Whether such granting of Campbell's PSI to petitioner's attorney was appropriate is not before this Court. As we noted in footnote 11, section 6–112(a)(3) makes a PSI available to a defendant (the subject of the report) upon request. Some of the reasons for keeping a PSI confidential would not even apply in the case at bar.

We note, nonetheless, that the fact that we do not address the appropriateness of the method by which defense counsel obtained the PSI in this case should not be construed as an approval of that method by this Court, nor as any authority for obtaining such reports in this fashion. That issue is not before us. We note further that, generally, administrative entities should not release PSI reports to anyone not specifically permitted by statute or rule to receive them, except upon an express order of court signed by a judge. Normally, consideration by a court may be accomplished by the administrative entity responding to a demand or request by filing a motion to quash, the filing of responsive pleadings by the requesting party, and the holding of any required hearings. In the responsive pleading and in the hearing, if any, the requesting party would have the burden of establishing a particularized need for the report, and the trial court would need to exercise its discretion by balancing the relative interests of the parties before arriving at its decision on whether to quash the request.

confidential from "public inspection" "[e]xcept on court order." Although, the determination as to whether to permit access to a PSI should be made with utmost care, it is still well within the authority of a court to make. As a United States District Court stated in 1996:

> This determination does not end the court's inquiry, however, for a presentence report's presumption of confidentiality is not absolute. A third-party [15] seeking access to a presentence report may overcome the report's confidentiality by demonstrating that disclosure will "serve the ends of justice," [*United States v.*] *Schlette,* 842 F.2d [1574,] 1579 [ (9th Cir.1988) ]; [*United States v.*] *McKnight,* 771 F.2d [388,] 390 [ (8th Cir.1985) ], or by establishing a "compelling, particularized need for disclosure," *Huckaby,* 43 F.3d at 138; *Corbitt,* 879 F.2d at 239 [n. 5.] Applying this standard requires a fact specific inquiry in which the need for confidentiality is balanced against the desirability of releasing a presentence report.[16] *Huckaby,* 43 F.3d at 139; *Schlette,* 842 F.2d at 1579, 1583; *Charmer,* 711 F.2d at 1173. The showing required of the party seeking disclosure will vary with the degree to which the need for confidentiality is present in a particular case. *Schlette,* 842 F.2d at 1583 (citing *United States Indus., Inc. v. United States Dist. Court,* 345 F.2d 18, 21 (9th Cir.), *cert. denied,* 382 U.S. 814, 86 S.Ct. 32, 15 L.Ed.2d 62 (1965)). This determination is committed to the sound discretion of the trial court and will be reviewed for abuse of discretion. *Huckaby,* 43 F.3d at 138; *Schlette,* 842 F.2d at 1577.

*United States v. Preate,* 927 F.Supp. 163, 166–67 (M.D.Pa. 1996); *see Huckaby,* 43 F.3d at 138 (recognizing that no court

---

**15.** The only "third party," petitioner, already had the PSI. The person to whom he was going to show the PSI, Campbell, is specifically permitted by statute or rule to see it.

**16.** The PSI was not proffered for "release" to "public inspection," nor was it, at the time the court ruled that it could not be used, proffered into evidence, but it was proposed, by a person who already had it, to be shown for memory refreshing purposes to a person who had an absolute right to see it.

has held that confidentiality of information contained in a PSI must be maintained in all circumstances); *Corbitt,* 879 F.2d at 239–40 (noting that in some situations, a PSI may be disclosed to meet a particularized need arising out of pending or contemplated litigation); *Charmer Indus.,* 711 F.2d at 1175 (concluding that a court "should not authorize disclosure of a presentence report to a third person in the absence of a compelling demonstration that disclosure of the report is required to meet the ends of justice."); *Hancock Bros., Inc. v. Jones,* 293 F.Supp. 1229, 1233 (N.D.Cal.1968) ("Information contained in a presentence report should not be disclosed to third parties unless lifting confidentiality is required to meet ends of justice."); *Halacy,* 670 A.2d at 1375; *State v. Bacon,* 167 Vt. 88, 91, 702 A.2d 116, 119 (1997) ("[T]he confidentiality of PSIs is not absolute.").

While the issue of what standard a trial court should use in determining whether a PSI should be disclosed is not before us, we do note that such a determination is within the authority of the court.[17] In any such instance, the determination

---

**17.** In *Zaal v. State,* 326 Md. 54, 602 A.2d 1247 (1992), a case in which a criminal defendant requested disclosure of his victim's confidential educational school records in order to impeach her credibility, we provided:

In cases in which access to confidential and/or sensitive records is sought by a defendant and which will be resolved based on credibility considerations, because of which, the trial court determines the "need to inspect" threshold has been crossed, the court may elect to review the records alone, to conduct the review in the presence of counsel, or to permit review by counsel alone, as officers of the court, subject to such restrictions as the court requires to protect the records' confidentiality. Which option the court chooses must depend on various factors, including the degree of sensitivity of the material to be inspected; the strength of the showing of the "need to inspect"; whether the information sought is readily identifiable; considerations of judicial economy, etc. The greater the "need to inspect" showing, *i.e.,* as here, where it is self-evident, and the less sensitive the information, for example, the more likely the records will be reviewed jointly by the court and counsel or by counsel as officers of the court.

*Id.* at 87, 602 A.2d at 1263–64. This standard would be consistent with our treatment of third party requests to breach grand jury confidentiality set out in *In re Criminal Investigation No. 437,* 316 Md. 66, 82–83, 557 A.2d 235, 243 (1989).

should be made on the facts and circumstances of that individual case.

We addressed an impeachment issue in *Hall v. State*, 292 Md. 683, 441 A.2d 708 (1982), a case in which we decided whether a statement made by the accused to a probation officer conducting a presentence investigation was admissible in a subsequent trial for the purpose of impeachment. We said:

Hall's last contention is that admitting Monk's testimony was a violation of Maryland Code ( [1957,] 1971 [Repl.Vol.], 1981 Cum.Supp.), Art. 41, § 124(b) [18] and Maryland Rule 771(b). [19] In pertinent part, section 124(b) provides that "presentence reports shall be confidential and not available for public inspection except upon court order or for use by any correctional institution." Maryland Rule 771(b) tracks section 124(b) and provides that a presentence report "is not a public record and shall be kept confidential as provided in Article 41, § 124(b) of the Maryland Code."

The short answer to this contention is that the report was not introduced nor was the substance of the report made public. The information provided the probation agent is the kind (such as name, age, home address) routinely and preliminarily ascertained in any interview and is not gathered for the purpose of incriminating the defendant. In our view this type of information was not intended by the Legislature to be protected by § 124(b) and thus we find no violation of either the spirit or the letter of § 124(b) or Rule 771(b).

We hold, therefore, that Monk's testimony based on the presentence interview was admissible to impeach Hall's statement made on direct examination and, as limited, this

---

**18.** Maryland Code (1957, 1971 Repl.Vol., 1981 Cum.Supp.), Article 41, section 124(b) is now section 6–112(a).

**19.** Maryland Rule 771 is now Maryland Rule 4–341.

testimony did not violate the confidentiality requirements of Article 41, § 124(b) or Rule 771(b).

*Id.* at 692, 441 A.2d at 713.

In the posture of the case at bar, when the trial court denied defendant the use of the PSI, it was not proposed that it be admitted into evidence. It was merely to be used for recollection refreshing purposes. Generally, when appropriate in the first instance, there are no limitations on the nature of the relevant documents that may be used in the refreshing of a witness's recollection. Such documents are not being admitted into evidence.[20]

As we have discussed, *supra,* in Maryland, the determination as to whether to disclose otherwise confidential information contained within a PSI is a question committed to the authority of the trial court. However, this exercise of authority has little role in the use of already obtained PSI documents to refresh recollection. The trial court in the case *sub judice* erroneously believed that it was mandatory to keep the information contained within a PSI confidential under all circumstances, even though the PSI was already in the defendant's possession. When faced with defense counsel's assertion that

---

**20.** Additionally, when the court is required to confront the issue of access to a PSI, an issue not before this Court in this case, the court can limit the disclosure of the information contained in the PSI to be only as broad as necessary. In the case *sub judice,* it appears that the defense counsel merely wanted to refresh the recollection of the witness who was the subject of the PSI, to the specifics of the crimes he committed. The PSI was not being admitted into evidence. It, so far as we can discern from the record, was not being submitted to a jury, and the information defense counsel wanted to refresh Campbell's memory with was merely concerned with Campbell's past admissions. As stated in *United States v. Schlette,* 842 F.2d 1574, 1581 (9th Cir. 1988), "if the reasons for maintaining [confidentiality] do not apply at all in a given case, or apply only to an insignificant degree, the party seeking disclosure should *not* be required to demonstrate a large compelling need." (alterations in original). In the case at bar, it can be argued that few, if any, of the reasons for confidentiality as to prohibiting "public inspection" exist when the report was to be shown only to the subject of the report to refresh his recollection. Moreover, as we have reiterated, access to the PSI was not the issue in this case. The defendant already had it; the witness was entitled, by statute, to it.

he was entitled to use the generally confidential PSI to refresh Campbell's recollection, the trial court repeatedly relied solely on the document's status as "confidential" and "for official Court use only." The trial court failed to recognize that the confidentiality requirement related primarily to "public inspection" and would not apply to showing it to the subject for whom it was prepared, a person who had the right to see it. Additionally, the trial court failed to perceive any difference in respect to its use in official court proceedings to refresh a witness's recollection, and making it available for "public inspection." In other words, the trial court erroneously concluded that it had no authority to allow the disclosure of the contents of the PSI because such information was always confidential. That is simply incorrect. The trial court's failure to permit defendant to utilize the PSI to refresh a witness's recollection was reversible error.

### b. Refreshing Recollection

Whether a witness's recollection may be refreshed by a writing or by other means depends on the particular facts and circumstances of the individual case. As we said in *Oken v. State*, 327 Md. 628, 612 A.2d 258 (1992), *cert. denied*, 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993):

> While it is true that in many circumstances, an examining attorney must first establish that a witness's memory is exhausted before refreshing the recollection of that witness, *see* 6 L. McLain, *Maryland Evidence* § 612.1 (and cases cited therein), laying such a foundation is not an absolute prerequisite. Instead, the question of whether a witness's recollection may be refreshed by a writing or some other object depends upon the particular circumstances.... *Bankers Trust Co. v. Publicker Industries, Inc.*, 641 F.2d 1361, 1363 (2d Cir.1981) ("There is no required, ritualistic formula for finding exhaustion of memory.") *State v. Greenlee*, 72 N.C.App. 269, 324 S.E.2d 48, 51–52 (1985) (prosecuting attorney did not improperly impeach State witness merely by attempting to refresh her memory upon realizing that her in-court testimony was contradictory to

her prior statement); *Walker v. State*, 445 So.2d 955, 957 (Ala.Crim.App.1983) (witness for State in a rape prosecution could refer to a writing for purpose of refreshing his recollection without first, as condition precedent, showing that it was necessary for his recollection to be refreshed); *Reproductive Health Services, Inc. v. Lee*, 660 S.W.2d 330, 335–36 (Mo.App.1983) (holding that "where witness' testimony concerned five separate incidents of trespassing over a period of approximately ten months, involving various defendants, ... trial court could, in the exercise of its discretion, permit witness to employ written list to refresh her recollection without any specific statement on her part that she needed the list to refresh her recollection."); *People v. Verodi*, 150 Cal.App.2d 137, 150–51[,] 309 P.2d 568, 576–77 (2d. Dist.1957) (holding that "in murder prosecution, district attorney's referring witness' attention to memorandum, previously prepared by witness, for purpose of refreshing witness' recollection and correcting a perfectly obvious omission was proper, even though witness had stated prior to seeing memorandum, that he had testified to everything which had been and that he did not need the memorandum to refresh his recollection."); C. McCormick, *Evidence* § 9 at 33–34 (4th ed. 1992) ("The witness may believe that she remembers completely but on looking at the memorandum she would be caused to recall additional facts. As the Chinese proverb has it, 'The palest ink is clearer than the best memory.' On the other hand, there is the ever-present danger that a suggestible witness may think that she remembers a fact because she reads it. It seems eminently a matter for discretion, rather than rule."); 3 J. Wigmore, *Evidence* § 765 at 145 (Chadbourn rev. (1965)) ("The forgoing rules [on present recollection revived] should not be treated as dogmas of inherent efficiency. They are merely crude rules-of-thumb, worthy of the adoption for the general purpose.... The trial court's discretion should control.") 6 L. McLain, *Maryland Evidence* § 612.2 (under Rule 612 of the Federal Rules of Evidence, "[o]nce a witness has been asked to testify or testified to a certain matter, if the

witness' memory appears to be incorrect or incomplete, counsel may attempt to refresh the witness' recollection."). *Id.* at 672–74, 612 A.2d at 279–80 (alterations in original); *see also Dorsey Bros., Inc. v. Anderson,* 264 Md. 446, 453, 287 A.2d 270, 274 (1972); *Butler v. State,* 107 Md.App. 345, 354–55, 667 A.2d 999, 1003–04 (1995); *Baker v. State,* 35 Md.App. 593, 602 n. 10, 371 A.2d 699, 705 n. 10 (1977); *see, e.g., United States v. Cody,* 114 F.3d 772, 777 n. 3 (8th Cir.1997); *Perry v. Magic Valley Reg'l Med. Ctr.,* 134 Idaho 46, 995 P.2d 816, 826 (2000); *State v. Bruno,* 236 Conn. 514, 534–35, 673 A.2d 1117, 1129 (1996).

We also recognize the large amount of freedom that an attorney has when choosing an object with which a witness's recollection can be refreshed. It is important to note the distinction between the admission of a memorandum into evidence as past recorded recollection and a memorandum or other item used only to revive present recollection. The limitations and concerns present for past recollection recorded have little bearing on present recollection revived. As the Court of Special Appeals has said:

> When dealing with an instance of Past Recollection Recorded, the reason for the rigorous standards of admissibility is quite clear. Those standards exist to test the competence of the report or document in question. Since the piece of paper itself, in effect, speaks to the jury, the piece of paper must pass muster in terms of its evidentiary competence.

> Not so with Present Recollection Revived! By marked contrast to Past Recollection Recorded, no such testimonial competence is demanded of a mere stimulus to present recollection, for the stimulus itself is never evidence. Notwithstanding the surface similarity between the two phenomena, the difference between them could not be more basic. *It is the difference between evidence and non-evidence.* Of such mere stimuli or memory-prods, McCormick says, at 18, "[T]he cardinal rule is that they are not evidence, but only aids in the giving of evidence." When we are dealing with an instance of Present Recollection Re-

vived, the only source of evidence is the testimony of the witness himself. The stimulus may have jogged the witness's dormant memory, but the stimulus itself is not received in evidence.

*Baker*, 35 Md.App. at 598–99, 371 A.2d at 702–03 (footnotes omitted) (alterations in original). Generally, an attorney is given wide latitude with choosing the item to be used to refresh a witness's memory. This is because the item is not admitted into evidence—the memory that is triggered, and ultimately testified about, is the admitted evidence.

In respect to notes taken of statements made by a person deceased at the time of trial, the attorney was permitted to refresh his recollection in our early case of *Waters v. Waters*, 35 Md. 531 (1872), even though the notes themselves may not have been admissible. We said: "[I]t cannot be understood as deciding that the notes of the testimony taken by a Judge or counsel are *per se* evidence. Such notes are mere memoranda, which may be used to refresh the memory of the witness who took them; but are not of themselves evidence. . . ." *Id.* at 540; *see also Miller v. State*, 251 Md. 362, 377, 247 A.2d 530, 538 (1968) (where a witness used a written, but not signed, confession to refresh his recollection "[w]e [found] no merit in the appellant's contention that it was error to permit the State's witness to refresh his recollection."), *vacated on other grounds by*, 408 U.S. 934, 92 S.Ct. 2851, 33 L.Ed.2d 747 (1972); *Askins v. State*, 13 Md.App. 702, 711, 284 A.2d 626, 631 (1971) ("[T]he predominate view today seems to be that . . . any memorandum or other object may be used as a stimulus to present memory, without restriction by rule as to authorship, guarantee of correctness, or time of making.").

Judge Learned Hand noted in *United States v. Rappy*, 157 F.2d 964 (2d Cir.1946), that:

When a party uses an earlier statement of his own witness to refresh the witness' memory, the only evidence recognized as such is the testimony so refreshed; and the party may not put the statement in evidence, although the other side may do so, and apparently the jury may call for

it, sua sponte.... Anything may in fact revive a memory: a song, a scent, a photograph, and allusion, even a past statement known to be false.

*Id.* at 967 (footnote omitted); *see State v. Souza,* 708 A.2d 899, 903 (R.I.1998) ("[A]ny writing or object may be used in an effort to refresh a witness's recollection."); *see also Wilson v. State,* 511 N.E.2d 1014 (Ind.1987); *Maryfield Plantation, Inc. v. Harris Gin Co.,* 116 Ga.App. 744, 159 S.E.2d 125 (1967).

While we have not addressed the issue, the fact that a document used to refresh recollection might not otherwise be admissible, or even that it was obtained improperly, has been held by other jurisdictions to be no bar to its being used to refresh recollection. In *State v. Poirier,* 694 A.2d 448, 450 (Me.1997), the Supreme Judicial Court of Maine held: "[A]t the very most, the notes were used to refresh the memory of the witness. In such circumstances, *the fact that a document is not admissible* does not prevent its use as a means of refreshing the recollection of a witness .... [t]he only question is whether a document ... is generally calculated to revive the witness's memory."

The Supreme Court of New Jersey in *State v. Carter,* 91 N.J. 86, 449 A.2d 1280, 1299 (1982), *aff'd in part, dismissed in part on other grounds by Carter v. Rafferty,* 826 F.2d 1299 (3d Cir.1987), permitted letters that had been obtained in violation of the Fourth Amendment, to be used to refresh recollection. In respect to the defendants' assertion that the letters could not be used, even for memory refreshment, because they were unconstitutionally obtained, the New Jersey court said:

This [the defendants'] rationale ignores the established distinction between a document that is evidential and one used to refresh a witness's recollection. Once a proper foundation has been laid, a witness may examine any document to refresh his memory. The oft-quoted statement of Lord Ellenborough in *Henry v. Lee,* 2 *Chitty,* 124, 124 (1814), sets forth the general rule:

[I]f upon looking at any document he can so far refresh his memory as to recollect a circumstance, it is sufficient;

and it makes no difference that the memorandum is not written by himself, for it is not the memorandum that is the evidence but the recollection of the witness.

Preliminarily the trial court must decide whether the memorandum does refresh the witness's recollection. It may decline to permit its use where the danger of undue suggestion outweighs the probable value of the evidence. In making this decision the trial court may consider the nature of the memorandum and the witness's testimony, including cross-examination, by which counsel may test the witness's credibility that his memory has been revived.

The admissible evidence is the recollection of the witness, and not the extrinsic paper. The test is whether the witness puts before the court his independent recollection and knowledge.

*Id.* at 122–23, 449 A.2d at 1299–1300 (citations omitted).

Documents, otherwise confidential, have been held to be permitted to refresh the recollection of a witness. The Supreme Court in *United States v. Socony–Vacuum Oil Co.*, 310 U.S. 150, 231–35, 60 S.Ct. 811, 848–49, 84 L.Ed. 1129 (1940) in reference to use of grand jury testimony to refresh recollection, said:

The Circuit Court of Appeals held that the trial court committed prejudicial error in refusing to permit defense counsel to inspect the transcript of grand jury testimony used to refresh the recollection of certain witnesses called by the government. . . .

. . . .

. . . As once stated by Judge Hough, "The bald fact that the memory refreshing words are found in the records of a grand jury is not a valid objection." Normally, of course, the material so used must be shown to opposing counsel upon demand, if it is handed to the witness. . . . Grand jury testimony is ordinarily confidential. But after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it. . . .

If the record showed that the refreshing material was deliberately used for purposes *not material* to the issues but to arouse the passions of the jurors, so that an objective appraisal of the evidence was unlikely, there would be reversible error. Likewise there would be error where under the pretext of refreshing a witness' recollection, the prior testimony was introduced as evidence. But here the grand jury testimony was used simply to refresh the recollection on *material facts* .... [Citations omitted.] [Emphasis added.]

*But see National Dairy Products Corp. v. United States,* 384 F.2d 457, 459 (8th Cir.1967) that places some limits on the disclosure of grand jury testimony to defendants,[21] *i.e.,* but, nonetheless noted the Supreme Court's statement in

*United States v. Proctor & Gamble Co., supra* [356 U.S. 677] at 683[, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)] that " 'problems concerning the use of the grand jury transcript at the trial to impeach a witness, *to refresh his recollection,* to test his credibility * * *' are 'cases of particularized need where the secrecy of the proceedings is lifted discretely and limitedly.' " The Court also observed that the developments in the area of disclosure of grand jury minutes were entirely consistent with the realization that disclosure, rather than suppression of relevant legal materials, normally promotes the proper administration of criminal justice. [Some citations omitted.]

*See also Post Houses, Inc. v. National Labor Relations Bd.,* 384 F.2d 463 (3d Cir.1967); *Commonwealth v. Silva,* 401 Mass. 318, 328, 516 N.E.2d 161, 168 (1987) (witness permitted to refresh his recollection by utilizing transcripts of his grand jury testimony); *State v. Krause,* 260 Wis. 313, 50 N.W.2d 439 (1951).

There are arguments that support that opposing counsel must be afforded an opportunity to review even confidential

---

**21.** *And see Plotkin v. Rabinowitz,* 54 Misc.2d 550, 283 N.Y.S.2d 156 (1967) (taped recordings taken in violation of wiretap statute not permitted to be used to refresh recollection during deposition).

documents used to refresh memory, and, in some circumstances, such documents may be available for jury inspection. Wigmore notes: "On a general principle . . . the writing must be *shown to him* [the opponent] *on request.*" 3 J. Wigmore, *Evidence in Trials at Common Law,* § 762 (Chadbourn rev. 1970). Wigmore then quotes from older opinions:

EYRE, L.C.J., in *Hardy's Trial,* 24 How. St. Tr. 200, 824 (1794): It is always usual and very reasonable, when a witness speaks from memorandums, that the counsel should have an opportunity of looking at those memorandums, when he is cross-examining that witness.

*R. v. Ramsden,* 2 Car. & P. 603 (1827). . . . TENTERDEN, L.C.J.: "You put the paper into the witness' hands to refresh his memory. It is very usual for the opposite counsel to see it and examine it, and I think he has a right to see it."

KINDERSLEY, V.C., in *Lord v. Colvin,* 2 Drewr. 205, 208 (1854): If a paper is put into the hands of a witness to refresh his memory, if after that nothing comes of it, if nothing more be done, then the other party has no right to look at it. But if anything further is done, if the witness is asked and answers questions about the document or the facts referred to in it, then at law the party on the other side has a right to see the document. . . . [E]very document produced should, I think, be shown to both sides.

Wigmore states that there are some circumstances where writings used to refresh recollection have been required to be shown to the jury, although not admitted as evidence *per se.*

§ **763. Writing used to revive recollection is not part of testimony; yet the jury may see it, to determine the propriety of its use.** It follows from the nature of the purpose for which the paper is used . . . that it is in no strict sense evidence. In this respect it differs from a record of past recollection. . . . Nevertheless, though the witness' party may not present it as evidence, the same reason of precaution which allows the opponent to examine it . . . allows the *opponent to call the jury's attention* to its

features, and also allows the jurymen, if they please, to examine it for the same end. In short, the *opponent,* but not the offering party, *has a right to have the jury see it....*

When confronted with a situation similar to that in the instant case, a cross-examiner attempting to refresh a witness' testimony, Wigmore says:

§ **764. Cross-examiner's use of writing to revive recollection .** Where the effort to refresh the witness' memory comes originally from the *cross-examining party,* several distinct questions may arise.

(1) *Must* the witness accede to the request and see if his memory is refreshed by the paper handed him? It seems entirely proper to require him, in the trial judge's discretion, to do this.

(2) When this is done, the paper so used must in fairness be shown to opposing counsel, and *read aloud* or shown to the jury if he should so desire.

(3) A paper thus desired to be used will usually be one containing a prior *inconsistent statement* of the witness; in this case, the rules will apply that the inconsistent statement is not equivalent to independent testimony ... and that the paper containing it must (in the jurisdictions following *The Queen's Case* ) first be shown to the witness before asking him upon its contents. [Some citations omitted.] [Footnotes omitted.]

A witness's PSI from a prior conviction, under circumstances such as those here present, would be acceptable to refresh the witness's recollection about the past offenses, especially when the witness claims to have forgotten the nature of the crimes for which he has been and is presently imprisoned, and where, as here, the issue of whether the prior assault was against a member of the same sex was argued as being relevant and material to whether the witness had made an unwanted sexual attack against his cell mate. That issue was argued as being squarely relevant to the issue of credibility, not only of the witness, but of the defendant as well.

## IV. Conclusion

We hold that the Court of Special Appeals erred in not reversing petitioner's conviction on the ground that the trial court should not have precluded petitioner from using a key State witness's PSI to refresh that witness's recollection. The confidentiality of a PSI is primarily directed to protect against "public inspection." It is not absolute. Accordingly, we reverse the decision of the Court of Special Appeals and remand with instructions to reverse the judgment of the Circuit Court for Anne Arundel County and remand the case to that court for a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THE COURT OF SPECIAL APPEALS WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND TO REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL; COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.**