*Darrell Leonard Mainor v. State of Maryland*, No. 55, September Term, 2020.  Opinion by Getty, J.

**CRIMINAL LAW – SENTENCING – DENIAL OF POSTPONEMENT – ABUSE OF DISCRETION** – Court of Appeals held that the trial court abused its discretion when it insisted that defendant be sentenced before discharging the jury and refused to postpone sentencing for either a long-form presentence investigation or defendant's mother's testimony, both of which were requested by defendant to mitigate his punishment. Additionally, Court of Appeals held that the trial judge's dismissive comments of the defendant's mother during the sentencing process could cause a reasonable person to infer the trial judge was not impartial, thereby violating defendant's due process rights to a fair sentencing.

Circuit Court for Wicomico County
Case No. C-22-CR-18-000762
Argued: May 10, 2021

IN THE COURT OF APPEALS
OF MARYLAND

No. 55

September Term, 2020

_____

DARRELL LEONARD MAINOR

V.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald
Watts
Hotten
Getty
Booth
Biran

JJ.

_____

Opinion by Getty, J.

_____

Filed: August 11, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This case calls on us to consider a trial judge's exercise of discretion in declining to postpone a defendant's sentencing. Following a two-day trial, Darrell Leonard Mainor was convicted of home invasion, burglary, assault, and reckless endangerment. Directly following the jury verdict, the trial court indicated its intention to move to sentencing. Mr. Mainor requested a postponement in order to prepare mitigating information for the court's consideration in fashioning his sentence. Specifically, Mr. Mainor requested that the court order a long-form presentence investigation report ("PSI")[1] and indicated that additional time would allow his mother to secure leave from work to testify on his behalf.

In response, the trial court denied Mr. Mainor's request for a long-form PSI and decided to move forward with sentencing despite his mother's absence. For reasons fully explained below, we find that the trial judge's use of discretion in reaching these outcomes was "manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *In re Don Mc.*, 344 Md. 194, 201 (1996) (quoting *State ex rel. Carroll v. Junker*, 79 Wash.2d 12, 26 (1971)). Additionally, the trial judge's remarks in the sentencing process demonstrated an unreasonable consideration of the jury's entitlement to observe sentencing and a perceivable partiality or bias against the defendant and his mother.

Therefore considering cumulatively the remarks and actions of the trial judge, we conclude that the trial judge abused his discretion by denying Mr. Mainor's request to postpone sentencing and, consequently, we reverse the judgment of the Court of Special

---

[1] "A pre-sentence investigation is an investigation of the relevant background of a convicted offender, usually conducted by a probation officer attached to a court, designed to act as a sentencing guide for the sentencing judge." *Germain v. State*, 363 Md. 511, 522 (2001) (citations and quotations omitted).

Appeals and remand the case to that court with instructions to vacate the sentence of the Circuit Court for Wicomico County and to remand the case to that court for re-sentencing before a different judge.

## BACKGROUND

### A. *Home Invasion, Burglary, and Assault.*

On July 23, 2018, a violent home invasion took place at 501 Christopher Street in Salisbury, Maryland at the home of an elderly ninety-year-old, Francis Joan McCrorey. Shirley Donohoe, an eighty-one-year-old woman and close friend of Ms. McCrorey, was assisting Ms. McCrorey in her home that day. After fixing lunch for Ms. McCrorey, Ms. Donohoe escorted Ms. McCrorey to the bathroom. As the two women exited the bathroom, they were confronted by an unfamiliar man in the house demanding to know where the money was kept. After Ms. Donohoe responded by explaining that she did not know where the money was, the assailant struck Ms. Donohoe in the face repeatedly, breaking her upper dental plate and nose as well as knocking her unconscious.

When Ms. Donohoe regained consciousness, she observed the assailant leave the home through the back door. Ms. McCrorey was sitting on the floor next to the bathroom, bleeding from her cheek.[2] Ms. Donohoe called 911 for assistance. Officer Noah King of the Salisbury Police Department responded to the call and found both women injured and frightened. Although in a frantic state, Ms. Donohoe was able to provide the responding

---

[2] Ms. Donohoe did not witness the assailant strike Ms. McCrorey and could not recall seeing any blood on Ms. McCrorey, but the responding police officer noted Ms. McCrorey's bleeding cheek. A line with a death certificate attached was submitted in the record by the State to inform the court that Ms. McCrorey died prior to trial.

2

officer with a brief description of the assailant, indicating he was a young African-American male wearing a gray sweatshirt with the hood pulled up. Both women were taken by ambulance to the hospital for medical treatment. Later at the hospital, Ms. Donohoe provided further details about her assailant's description, estimating that he was between twenty and twenty-five years old, about five feet, ten inches tall, and between one-hundred and eighty and two hundred pounds with a stocky build.

Back at the scene of the incident, investigating officers discovered that two upstairs bedrooms had been ransacked and a fireproof safe had been emptied. Additionally, the officers located an open second-floor window situated above a first-story roof. A large oil tank sat below the first-story roof. The officers determined that the assailant likely climbed the oil tank, accessed the first-story roof, and then climbed through the second-floor window to enter the home. Swabs from the oil tank and from the windowsill provided sufficient DNA for an expert in forensic DNA analysis to make a match to Darrell Leonard Mainor's DNA profile.

Following the DNA match, Ms. Donohoe was shown a photo array on September 21, 2018. She did not positively identify Mr. Mainor but did note that his photo was the "closest" to the man that assaulted her. Mr. Mainor was interviewed by the police on November 6, 2018 and initially denied any involvement in the incident, asserting that he had never been to Ms. McCrorey's home. He later stated that he might be willing to provide information regarding the incident in exchange for a deal. On the same day, Mr. Mainor was arrested and charged with twelve criminal counts in connection with the home

3

invasion, burglary, and assault, of Ms. Donohoe and Ms. McCrorey. Later at trial, Ms. Donohoe identified Mr. Mainor as her assailant.

### B.   *Trial and Sentencing.*

Following a two-day jury trial on July 16 and 17, 2019, the jury found Mr. Mainor guilty of home invasion; first, third, and fourth-degree burglary; first and second-degree assault against Ms. Donohoe; and reckless endangerment. The jury found Mr. Mainor not guilty of first and second-degree assault against Ms. McCrorey.

After polling the jury, the trial judge immediately stated, "All right. We'll go to sentencing." Mr. Mainor's defense counsel responded by requesting to postpone sentencing to undertake a long-form PSI. The trial judge indicated there was no need for a PSI, to which defense counsel responded that Mr. Mainor's mother was unable to be present that day even though she had been at the trial the prior day. In light of her absence, defense counsel emphasized the importance of providing the court with "some background information about [Mr. Mainor] in order to fashion an appropriate sentence." The trial judge then asked why Mr. Mainor's mother was unable to be present, to which defense counsel responded, "she has this thing called work that she had to attend." The trial judge speculated, "[s]o it's obviously not that important to her."

While asking the State's position on the request to postpone sentencing, the trial judge reasoned, "I think the jury is entitled to see the resolution of this case." The State offered no objection to the postponement. Following a short discussion about whether or not the trial judge was able to sentence Mr. Mainor for both the convictions at issue and other violations of probation, the trial judge again reiterated, "I see no need at all, any

4

benefit at all from a long-form PSI." Defense counsel then asked the trial judge to release the jury from the jury box, although acknowledging that the jury was free to stay if they wished. The trial judge responded, "that's not your decision. Maybe they would like to stay here . . . . They can stay right where they are, as far as I'm concerned." Defense counsel objected "to the [c]ourt's process[,]" to which the trial judge replied, "[this is a] process which I've followed for fifteen years."

The court then went on to hear the State's recommendations for sentencing as well as statements by two of Ms. Donohoe's sons. The State asked for a total sentence of fifty years. Following a discussion of merger related to several charges, the court then heard from defense counsel who asked for a "substantially lower" sentence. While addressing the court, defense counsel stated, "[m]y client is very young. As I indicated to the [c]ourt, I wish that his mother was capable of being here. Unfortunately, she did have to work." The trial judge answered, "[s]he could be here, [defense counsel], you know that." Defense counsel replied, "[s]he was here all day yesterday, Your Honor. It is hard for people to get away from work multiple days in a row, especially if they're in, you know, doing certain types of jobs." Finally, the court heard a brief statement from Mr. Mainor.

The trial judge imposed a sentence of twenty years' incarceration for first-degree burglary and twenty years' incarceration for first-degree assault, to be served consecutively. Shortly thereafter, the trial judge addressed the jury stating, "Mr. Foreman, and ladies and gentlemen of the jury, thank you very much for your services. It was not an easy case to judge. So thank you, you are now free to go."

5

## C.     *Appeal and Opinion of the Court of Special Appeals.*

On November 5, 2020, in an unreported opinion, the Court of Special Appeals affirmed Mr. Mainor's home invasion, first-degree assault and reckless endangerment convictions,[3] holding that there was sufficient evidence for each. *Mainor v. State*, No. 1068, Sept. Term, 2019, slip op. at 4–9 (filed Nov. 5, 2020).  The Court of Special Appeals additionally held that the trial court did not abuse its discretion in overruling defense counsel's objection to improper comment in the State's closing argument because the improper comment was a harmless error. *Id.* at 11–16.  Lastly, pertinent to this case, the Court of Special Appeals held that the trial court's refusal to postpone sentencing was not an abuse of discretion, reasoning that, when questioned, defense counsel did not proffer any "specific details of what he expected the pre-sentence investigation to reveal" or what Mr. Mainor's mother's "hypothetical testimony would entail." *Id.* at 16–17.  Thus, the Court of Special Appeals concluded that the trial court did not abuse its discretion for failing to weigh "information that was never offered." *Id.* at 17.

Mr. Mainor timely petitioned this Court for a writ of certiorari, which we granted on February 8, 2021.  *Mainor v. State*, 472 Md. 313 (2021).  Before us is the following question:

> Did the trial court abuse its discretion and violate Petitioner's right to present information in mitigation of punishment where the court insisted that Petitioner be sentenced before it discharged the jury and refused to postpone sentencing for either a presentence investigation or the appearance and testimony of Petitioner's mother on his behalf?

---

[3] Mr. Mainor's conviction for first-degree burglary was not at issue before the Court of Special Appeals.

For the reasons more fully stated below, we answer this question in the affirmative and hold that the trial court abused its discretion when it insisted that Mr. Mainor be sentenced before discharging the jury and refused to postpone sentencing for either a long-form PSI or Mr. Mainor's mother's testimony. Accordingly, we reverse the judgment of the Court of Special Appeals.

## STANDARD OF REVIEW

"It is settled that the decision whether to grant a postponement is within the sound discretion of the trial judge." *Ware v. State*, 360 Md. 650, 706 (2000) (citing *Wilson v. State*, 345 Md. 437, 451 (1997)). "Where the decision or order of the trial court is a matter of discretion it will not be disturbed on review except on a clear showing of abuse of discretion, that is, discretion manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons." *In re Don Mc.*, 344 Md. at 201 (quoting *Junker*, 79 Wash.2d at 26). Additionally, "[a]n abuse of discretion occurs where no reasonable person would take the view adopted by the circuit court." *Montague v. State*, 471 Md. 657, 674 (2020) (quoting *Williams v. State*, 457 Md. 551, 563 (2018)).

## DISCUSSION

### A.    *Parties' Contentions.*

Mr. Mainor, Petitioner, argues that the circuit court abused its discretion in denying his request to postpone sentencing. Mr. Mainor asserts that, by moving directly to sentencing immediately following the delivery of the jury verdict, his rights to present information in mitigation of punishment were violated. Specifically, Mr. Mainor contends that the circuit court abused its discretion by refusing to postpone his sentencing to allow

7

for either a long-form PSI or for his mother to be available to testify on his behalf as requested by his counsel. In support of his claim of abuse of discretion, Mr. Mainor argues that the trial judge relied on untenable grounds to deny the postponement, as evidenced by the trial judge's speculative comments about his mother's absence and the trial judge's remarks about the jury's entitlement to observe his sentencing. Finally, Mr. Mainor contends that the trial judge's negative and unfounded comments about his working mother created an appearance of unfairness and partiality, resulting in a due process violation and constituting yet another basis for this Court to find an abuse of discretion. Accordingly, Mr. Mainor asks this Court to reverse and remand this case to the Court of Special Appeals with instructions to remand the case to the circuit court for re-sentencing before a different judge.

Conversely, the State, Respondent, argues that the circuit court properly exercised its discretion in denying Mr. Mainor's request to postpone sentencing. The State contends that Mr. Mainor's request for a postponement primarily depended on his request for a long-form PSI. Emphasizing that the decision to grant or deny a PSI is also discretionary, the State maintains that Mr. Mainor did not meet his burden of showing that the circuit court should order the PSI because he failed to proffer specific information or circumstances that required further investigation in order to assist the sentencing process. The State points out that Mr. Mainor only articulated that the PSI would potentially reveal "some background information." Thus, the State reasons, without further justification for the PSI request, the trial judge reasonably determined "that a PSI providing only generic, summary background information" would offer no benefit for sentencing.

Additionally, the State contends that the circuit court did not abuse its discretion in declining to postpone Mr. Mainor's sentencing on the basis of his mother's absence. Again, the State maintains that Mr. Mainor failed to "explain the content of his mother's expected testimony" or "proffer the materiality" of her testimony. The State therefore asserts—bearing in mind the absence of an explanation of how Mr. Mainor's mother's testimony would provide mitigating information—that the trial judge exercised proper discretion in refusing to postpone sentencing for the purpose of accommodating her testimony on a later date.

Lastly, the State argues that the trial judge's "stray comments" regarding the absence of Mr. Mainor's mother and the entitlement of the jury to witness sentencing did not affect the postponement ruling. Consequently, the State asserts these comments were harmless, and that although "reasonable people might disagree with the court's comments about the jury and [Mr.] Mainor's mother, they would not infer bias or partiality[.]" Accordingly, the State argues that Mr. Mainor was not denied a fair trial and asks this Court to affirm the Court of Special Appeals' opinion below.

**B.** ***Denial of Request to Postpone.***

We begin our analysis by considering the trial court's denial of Mr. Mainor's request to postpone sentencing beyond the date of the jury verdict. As we have noted, the decision on whether to postpone sentencing "is committed to the sound discretion of the court." *Abeokuto v. State*, 391 Md. 289, 329 (2006) (citing *Ware*, 360 Md. at 706). We have defined judicial discretion as "a composite of many things, among which are conclusions drawn from objective criteria . . . [and] judgment exercised with regard to what is right

9

under the circumstances and without doing so arbitrarily or capriciously." *In re Don Mc.*, 344 Md. at 201 (quoting *Junker*, 79 Wash.2d at 26). Additionally, the "proper exercise of discretion involves consideration of the particular circumstances of each case . . . [and] a court errs when it attempts to resolve discretionary matters by the application of a uniform rule, without regard to the particulars of the individual case." *Gunning v. State*, 347 Md. 332, 352 (1997).

Next, we recognize that a defendant has an absolute right to allocution, which includes an absolute right to present mitigating information, prior to sentencing pursuant to Maryland Rule 4-342(e), which provides:

> Before imposing sentence, the court shall afford the defendant the opportunity, personally and through counsel, to make a statement and to present information in mitigation of punishment.

Md. Rule 4-342(e). *See also Chaney v. State*, 397 Md. 460, 470–71 n.6 (2007) ("Defendants have a right . . . to allocute, which includes the right 'to present information in mitigation of punishment.'"). As we have stated before, this rule is not permissive. *See Jones v. State*, 414 Md. 686, 698 (2010) (citing *Kent v. State*, 287 Md. 389, 393 (1980)). Instead, "[i]t is this Court's position that the trial judge has to consider mitigating evidence when it is offered[.]" *Id.* at 701. Put another way, "while what the trial court makes of evidence offered in mitigation is a matter entrusted to its discretion, its application of [Rule 4-342(e)] . . . is mandatory." *Id.* at 703. The remedy for a violation of this rule is re-sentencing. *Id.* (quoting *Kent*, 287 Md. at 393–94).

Here, Mr. Mainor argues that the trial court abused its discretion by failing to give proper weight to the importance of allowing Mr. Mainor to present additional information

10

in mitigation of punishment. We agree. Irrespective of a trial judge's perception of the benefit of hearing mitigating evidence under an individual set of facts, the opportunity to present mitigating information *must* be given to a defendant pursuant to Maryland Rule 4-342(e). By refusing Mr. Mainor's request to postpone the sentencing beyond the date of the verdict, the trial judge eliminated Mr. Mainor's opportunity to present mitigating information in either manner proposed by Mr. Mainor—namely a long-form PSI or his mother's testimony. As we further explain below, we hold that this was a violation of Maryland Rule 4-342(e) and, as such, requires that Mr. Mainor be re-sentenced.

> *a.*      *Denial of the Long-form PSI.*

Initially, the State emphasizes that pursuant to § 6-112(b) of the Correctional Services Article ("COR") of the Maryland Code, the trial court's ruling on a PSI request is discretionary, and the requesting party bears the burden of establishing that the investigation should be ordered. COR § 6-112(b) provides:

> (b)(1) *If a circuit court is satisfied that a presentence investigation report would help the sentencing process, the court may order the Division to complete a report* before:
> > (i) sentencing a defendant who is convicted of a felony or of a misdemeanor that resulted in serious physical injury or death to the victim to the jurisdiction of the Division of Correction; or
> > (ii) referring a defendant to the Patuxent Institution.
> (2) *The party that requests the report has the burden of establishing that the investigation should be ordered*.

Md. Code (1999, 2017 Repl. Vol.), COR § 6-112(b) (emphasis added). The State maintains that the fact that other circumstances—not present here—give rise to a statutorily mandated PSI further underscores the trial judge's discretion to deny Mr. Mainor's PSI request in this

11

case. *See* Md. Code (1999, 2017 Repl. Vol.), COR § 6-112(c)(1) (mandating a PSI in cases of first-degree murder convictions where the State has requested life without parole).

Here, in response to Mr. Mainor's requests for a PSI, the trial judge remarked that he did not think that a long-form PSI was warranted, asking Mr. Mainor's counsel, "What will a long-form PSI tell me?" The trial judge later stated, "I see no need at all, any benefit at all from a long-form PSI." The State contends that by stating there was no "benefit" or "need" to order a PSI, the trial judge clearly indicated that he was not satisfied that a presentence investigation report would assist the sentencing process. Therefore, the State argues the trial judge properly exercised discretion in denying Mr. Mainor's request for a PSI under COR § 6-112(b)(1).

Furthermore, the State argues that Mr. Mainor failed to meet his burden of establishing why the court should order a long-form PSI. The State relies on a Court of Special Appeals case, *Somers v. State*, to support this assertion. 156 Md. App. 279 (2004). In *Somers*, the defendant was sentenced the same day as the verdict was returned, and in that case the following colloquy occurred:

> THE COURT: [Mr. Prosecutor], as to sentencing?
>
> [STATE]: Your Honor, the State is ready to proceed with sentencing.
>
> [DEFENSE]: Your honor, I request a pre-sentence investigation.
>
> THE COURT: Denied. We will sentence today. [Mr. Prosecutor]?

*Id.* at 318. On appeal, the defendant argued that the trial court abused its discretion "by failing to give him an opportunity to explain the basis for his request for a presentence investigation and by failing to exercise any discretion at all in denying the request for such

12

an investigation." *Id.* However, the Court of Special Appeals held that the trial court properly denied the PSI request because the defendant "did not give a reason and did not attempt to give a reason" for the request and thus made "no showing . . . to support it." *Id.* at 319.

Here, the State notes that when asked what a PSI would reveal, Mr. Mainor's counsel stated:

> Well, for example, my client's mother was here yesterday, she's unable to be here this morning. I do think it's important that the [c]ourt has some background information about my client in order to fashion an appropriate sentence.

Additionally, at another point Mr. Mainor's counsel referenced the importance of providing the trial court with background information through a PSI because it was likely that Mr. Mainor's sentence would be substantial. The State maintains that these responses made no "showing of need" for a PSI because they failed to proffer what specific background information the PSI may provide.

In the same vein, the State argues that Mr. Mainor's justification for his PSI request—to provide some background information—amounted to a boilerplate definition of a PSI. *See Germain*, 363 Md. at 522 (defining a PSI as an "[i]nvestigation of the relevant background of a convicted offender"). The State emphasizes that the purpose of any PSI is to provide background information about the defendant, and if "a stated desire to provide 'background information' alone compels a PSI, then courts effectively must order an investigation on demand[,]" thereby eviscerating judicial discretion. Therefore, the State contends that without a case-specific explanation of how a PSI would assist the sentencing

process, the trial court did not abuse its discretion in declining to postpone Mr. Mainor's sentencing for a long-form PSI.

We strongly disagree with the State's position. *Somers* is easily distinguishable from this case because counsel for the defendant in *Somers* did not offer any explanation for the PSI request whatsoever. *See Somers*, 156 Md. App. at 318. The extent of the PSI request in *Somers* was, "Your honor, I request a pre-sentence investigation." *Id.* It is quite clear from the record that there was a more detailed discussion surrounding the need for a PSI in Mr. Mainor's case.

Moreover, while case-specific reasoning would, of course, be useful in persuading the trial judge of the benefit of a PSI to the sentencing process, we reject the State's argument that a defendant must proffer case-specific reasoning or articulate specific circumstances in his or her background meriting further investigation in order to meet the burden imposed by COR § 6-112(b)(2). The very nature of a PSI—or any investigation, for that matter—is to unearth new and relevant information. This information is used to assist the sentencing court "in reaching its goal of individualizing the sentence to fit the offender and not merely the crime." *Germain*, 363 Md. at 523 (citation and quotations omitted). A PSI report may

> vary in scope and focus, but typically contain[s] at least the following items:
> (1) complete description of the situation surrounding the criminal activity;
> (2) offender's educational background; (3) offender's employment background; (4) offender's social history; (5) residence history of the offender; (6) offender's medical history; (7) information about environment to which the offender will return; (8) information about any resources available to assist the offender; (9) probation officer's view of the offender's

14

motivations and ambitions; (10) full description of the defendant's criminal record; and, (11) recommendation as to disposition.

*Germain*, 363 Md. at 522 n.9.

It is apparent to us that a PSI report often generates a wealth of new information that may not always be at the defense counsel's immediate disposal when requesting a PSI. Thus, we conclude that it would be illogical to require a showing of specific information anticipated to be revealed by a future investigation that—at the time of the showing—had not yet been undertaken. Instead, we conclude that Mr. Mainor met the burden to adequately justify his PSI request under COR § 6-112(b)(2) by effectively communicating the absence of availability of any alternative source of background information to fashion an appropriate sentence.

While the State primarily argues that the PSI denial was proper and thus merited the postponement denial, Mr. Mainor declines to narrow the focus of his argument to the isolated issue of the trial court's denial of the PSI request. Although Mr. Mainor acknowledges that the decision to order a PSI is a matter of the trial court's discretion, he refutes the State's proposition that his "postponement request depended on [his] PSI request[.]" Mr. Mainor contends that the postponement request was not so limited, and the PSI was simply one of two means—his mother's testimony being the other—that his attorney offered to present background information in mitigation of punishment. Mr. Mainor argues that the trial court could have properly exercised its discretion by denying the PSI request but still granting a postponement to secure his mother's testimony at a later time.

15

Although we agree with Mr. Mainor that the trial court's decision to deny the postponement request was a separate abuse of discretion, we also conclude that the trial court abused its discretion in failing to order a long-form PSI in this circumstance. As we have made clear, a "trial judge should tailor the criminal sentence to fit the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Jones*, 414 Md. at 693 (quotations omitted) (quoting *Jackson v. State*, 364 Md. 192, 199 (2001)). "[H]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics." *Cruz-Quintanilla v. State*, 455 Md. 35, 40 (2017) (quoting *Smith v. State*, 308 Md. 162, 167 (1986)); *see also Smith*, 308 Md. at 167 ("[A] wide variety of information about a specific defendant permits the sentencing judge to individualize the sentence . . . .").

While we certainly recognize that a trial judge has broad discretion to grant or deny a PSI request under COR § 6-112(b)(1), we have stated that a court abuses its discretion when "no reasonable person would take the view adopted by the [trial] court, or when the court acts without reference to any guiding rules or principles." *Cagle v. State*, 462 Md. 67, 75 (2018) (quoting *Alexis v. State*, 437 Md. 457, 478 (2014)). Here, the circuit court ignored important guiding principles when determining Mr. Mainor's sentence. Specifically, the circuit court failed to consider the principle of tailoring an appropriate sentence to fit the defendant, not merely the crime. Moreover, the circuit court infringed upon Mr. Mainor's statutory right to present mitigating information. Mr. Mainor made it

16

abundantly clear that he was not prepared to provide any additional information to mitigate his punishment—apart from making a short, personal statement on his own behalf—because of the trial court's immediate shift from verdict to sentencing. This immediate shift precluded the trial court's balance, on the record, of relevant sentencing considerations, including the defendant's background, criminal history, and mitigating factors, while maintaining the appearance of fairness and objective reflection, prior to the pronouncement of the sentence. In this case specifically, the trial court's decision to proceed directly to sentencing and the fact that the trial lasted longer than anticipated, together, precluded a long-form PSI and Mr. Mainor's mother's testimony.[4]

While it was within the trial judge's discretion to determine whether he was satisfied that a PSI would assist the sentencing process here pursuant to COR § 6-112(b)(1), no reasonable person could determine that a PSI would be entirely unhelpful in individualizing Mr. Mainor's sentence. This is particularly true where Mr. Mainor had no other opportunity to present mitigation. Far from considering "the fullest information possible concerning the defendant's life and characteristics[,]" the trial judge here fashioned a sentence using no information other than Mr. Mainor's age at the time of the crime, twenty

---

[4] Mr. Mainor's mother was present the entire prior day, which was the first day of trial. On the first day of trial, the court stated, "[t]he trial will take just one day. It will be a full day." Additionally, in her opening statement, the Assistant State's Attorney remarked, "[i]t's going to be a one-day case. We're going to move quickly." On the second day, the court thanked the jury for coming back another day stating, "we didn't expect to be here a second day[.]" As fully discussed later in this opinion, Mr. Mainor's mother was unable to attend the unanticipated second day of trial because of her work commitments.

17

years old, and his age at the time of sentencing, twenty-one years old, and his criminal record. *Cruz-Quintanilla*, 455 Md. at 40.

The State maintains this lack of background information was simply attributable to a poor proffer by Mr. Mainor's defense counsel and did not amount to an unrefuted need for a PSI. We acknowledge that there may be instances in which additional information to further assist in individualizing a defendant's sentence may be unnecessary because the court had previously received the information, or the information was unobtainable. However, in this case Mr. Mainor's attorney expressed that he was unable to prepare a more comprehensive proffer because he did not have advance notice that the trial would carry over to a second day, thereby precluding testimony from Mr. Mainor's mother, and, in the absence of any mitigating testimony, his request for a postponement to obtain a long-form PSI would be denied.[5] While a PSI is not the only way to adhere to the guiding principle of individualizing criminal sentences through relevant background information, in this case where almost no additional background information was readily available, a PSI irrefutably would have benefited the sentencing process. Finally, the trial court's refusal to order a PSI, together with the trial court's refusal to allow for Mr. Mainor's mother's testimony, as discussed, *infra*, violated Mr. Mainor's right to present information

---

[5] We note that, in any case, defense counsel should not be expected to work up their sentencing cases before a guilty verdict—at least in the absence of sufficient pretrial notice that the trial judge will proceed straight to sentencing in the event of a conviction. This is particularly true in a case, such as Mr. Mainor's, where the possible conviction is of serious violent crimes carrying lengthy sentences. In such cases, mitigating information is uniquely vital, and postponements should be granted liberally to obtain such information, especially where no such information is readily available absent a postponement.

18

in mitigation of punishment by removing any possibility to secure such information prior to sentencing. Thus, under the facts of this case, the trial judge's refusal to order a PSI was an abuse of discretion.

> b.    *Denial of Request to Accommodate Mr. Mainor's Mother's Testimony.*

Now, we turn to the arguments concerning the second potential source of mitigating information—that is the testimony of Mr. Mainor's mother—for the purpose of further analyzing the overarching issue of the trial court's denial of the motion to postpone sentencing. In addressing the trial court's denial of the motion to postpone sentencing to accommodate Mr. Mainor's mother, the State first argues that Mr. Mainor did not actually ask to postpone sentencing in order for his mother to testify. Instead, the State maintains Mr. Mainor merely cited his mother's absence as an example of why the court needed to postpone sentencing for the purpose of ordering a PSI.

We are not persuaded by this argument. The exchanges between Mr. Mainor's counsel and the trial judge clearly indicated that Mr. Mainor was seeking a postponement to provide additional background information in mitigation of punishment—either through the live testimony of his mother or the PSI report, or both. Moreover, the record also indicates that the State did not object to Mr. Mainor's request for postponement. At one point, Mr. Mainor's counsel informed the trial judge that Mr. Mainor's mother was unable to be there to testify in his support, to which the trial judge inquired about her whereabouts. Mr. Mainor's counsel indicated she was unable to get off work and later reiterated, "[a]s I indicated to the [c]ourt, I wish that his mother was capable of being here. Unfortunately, she did have to work." These exchanges leave no doubt that the trial judge was aware that

19

Mr. Mainor wished for his mother to testify on his behalf, which was only possible if the sentencing was postponed to a later date. That fact, in conjunction with the prolonged request to postpone sentencing and the discussion of the lack of readily available background information to present on Mr. Mainor's behalf, negates the State's argument that Mr. Mainor cited the absence of his mother merely as an example to support the need for a PSI.

Next, the State contends that even if Mr. Mainor did request a postponement to secure his mother's testimony, the court did not abuse its discretion in denying that request because Mr. Mainor "made no effort to explain the content of his mother's expected testimony or how it would be mitigating." The State argues that this Court should impose the same materiality standard required of defendants seeking to postpone trial for a missing witness on defendants seeking to postpone sentencing on the same basis. *See Jackson v. State*, 214 Md. 454, 459 (1957) (citing *Harris v. State*, 141 Md. 526, 530 (1922)) (emphasizing that the "party requesting the continuance should show: . . . that the evidence was competent and material"). Thus, the State asserts that this Court should require a party seeking to postpone sentencing for a missing witness to proffer the absent witness' materiality. Taking the argument to its logical conclusion, the State asserts that Mr. Mainor did not adequately establish his mother's materiality as a witness because no details were given on what she might say or how her expected testimony would be mitigating, and therefore the denial of postponement on the basis of accommodating her testimony was proper.

20

Mr. Mainor refutes this argument, correctly emphasizing that the State's desire for a materiality requirement that treats the testimony of a fact witness at a trial and the testimony of a witness who appears at sentencing on behalf of a convicted individual as one and the same is flawed. A definition of "materiality" was provided by the Court of Special Appeals in *Green v. State*:

> [T]he term "materiality" refers to the required relationship between that fact and an issue which is the proper subject of proof in the case. . . . A material fact is a fact that is of legal consequence to the determination of the issues in the case.

81 Md. App. 747, 754 (1990).

Relying on this definition of materiality, Mr. Mainor argues that the type of testimony given on behalf of a convicted individual at a sentencing hearing is not intended to address a "subject of proof" in a case or be "of legal consequence to the determination of the issues in the case." *Id.* Additionally, Mr. Mainor asserts that the State's suggestion that a defendant should be required to demonstrate proposed information, such as anticipated testimony, will be mitigating is not feasible because each court's determination of what information will be mitigating is entirely subjective. We agree. As we have noted previously, a trial court *must* consider mitigating evidence, but has the discretion to accept it or not. *See Jones*, 414 Md. at 701. Mr. Mainor correctly notes that a judge's determination of the materiality of mitigating evidence is subjective and therefore should

21

not be a gatekeeping standard for whether to hear the evidence in the first place. Hence, we conclude that such a standard is ill-suited for the sentencing process.[6]

Moreover, the right of allocution and mitigation allows for the very broad presentation of information. The right to allocution, including both a criminal defendant's right to make a statement on his own behalf and his right to present any information in mitigation of punishment, was originally a common law right that was recognized as early as 1689. *Green v. United States*, 365 U.S. 301, 304 (1961). In Maryland, the common law right of allocution was first codified in the Maryland Rules of Procedure in 1962 as Rule 761(a).[7] *Brown v. State*, 11 Md. App. 27, 31 (1971). In *Brown*, Judge Charles Awdry Thompson of the Court of Special Appeals clearly articulated the right of allocution under Rule 761(a):

> The requirement of allocution as embodied in Rule 761a contains no caveats to limit its application, thereby indicating a *broad application is intended*. The long history of the requirement of allocution (which has been traced to 1689, *Green v. United States* . . .), and the importance of the Rule (as an opportunity for counsel or accused to argue as an advocate for the accused's case and refute whatever factors may be presented by the State concerning sentence) encourage *broad application*. Further, the importance of the sentence itself to the accused cannot be overlooked . . . . [T]he high percentage of convictions in criminal prosecutions indicates that quite

---

[6] Additionally, as we have indicated before, the standards and rules that apply to a trial are often far different than those that apply to a sentencing hearing. *See, e.g.*, *Smith*, 308 Md. at 166 ("The strict rules of evidence do not apply at a sentencing proceeding" because such rules "have been fashioned for criminal trials which narrowly confine the trial contest to evidence that is strictly relevant to the particular offense charged.") (quoting *Williams v. New York*, 337 U.S. 241, 247 (1949)).

[7] Rule 761(a) provided: "Sentence shall be imposed without unreasonable delay. Before imposing sentence the court shall afford an accused or his counsel an opportunity to make a statement and to present information in mitigation of punishment." *Brown*, 11 Md. App. at 31.

22

> possibly the most contested aspect of the trial is the sentence. For these reasons, the proper application of Rule 761a includes all criminal trials
> . . . .

11 Md. App. at 32–33 (emphasis added). It is apparent to us that our application of Maryland Rule 4-342(e), which is the modern codification of the historic common law principle and the current iteration of Rule 761(a), is broad. Thus, we conclude it would be erroneous to impose a narrow materiality requirement on anticipated testimony of an absent witness during the sentencing process as advocated for by the State in this case.

Having addressed the arguments of the State, we now turn to the more sweeping contentions of Mr. Mainor. Again, Mr. Mainor does not limit his argument to one aspect of the postponement denial, but rather encourages this Court to consider the postponement denial in light of both the denial to order a PSI and the denial to postpone sentencing to secure the testimony of Mr. Mainor's mother. Mr. Mainor argues that his right to present information in mitigation of punishment could have been satisfied by either a PSI report or his mother's testimony. However, Mr. Mainor contends that the effect of the trial judge's refusal to postpone sentencing until a later date to afford his working mother the opportunity to take leave from her job and testify on his behalf—in conjunction with the trial judge's refusal to order a PSI—was to sentence him without affording him the opportunity to present mitigating information as is statutorily required. Mr. Mainor maintains that the trial court's abuse of discretion "is more readily apparent" on this broader issue of declining to postpone the sentence.

We agree. Even if we had held that the trial court's refusal to order a PSI in this case was not an abuse of discretion, we would still certainly conclude that no reasonable

23

person could determine that *both* the PSI and Mr. Mainor's mother's testimony were unnecessary while still adhering to the guiding principle requiring a defendant's sentence to be personally tailored and individualized as we discussed, *supra*. To be certain, the same types of background information may have been presented by either source—the PSI report or Mr. Mainor's mother's live testimony—but the trial court's exclusion of both, without an alternative source of additional information available, was manifestly unreasonable and therefore constituted an abuse of discretion.

Additionally, the trial court's decision in denying the defendant either means of obtaining further information to present in mitigation of his sentence, specifically in light of the immediate shift from verdict to sentencing with no advance notice to prepare to present such information, violated Maryland Rule 4-342(e)'s mandate to "afford the defendant the opportunity, personally and through counsel, to . . . present information in mitigation of punishment." Accordingly, the remedy for such a violation is re-sentencing. *See Jones*, 414 Md. at 703 (quoting *Kent*, 287 Md. at 393–94).

## C.    *Trial Judge's Comments Regarding the Jury and Mr. Mainor's Mother.*

We now address the issue of whether the trial judge's comments during sentencing constitute an abuse of discretion. With regard to the trial judge's comments concerning the jury's entitlement to observe sentencing from the jury box, the following colloquy occurred:

> [DEFENSE COUNSEL]: Your Honor, I've . . . I've made the comments that I have. And I would ask the Court to excuse the jury. They don't need to sit in the jury box –
>
> THE COURT: Well –

[DEFENSE COUNSEL]: – they can certainly remain if they wish.

THE COURT: – that's not your decision. Maybe they would like to stay here, [defense counsel].

[DEFENSE COUNSEL]: They're absolutely able to stay in the gallery.

THE COURT: They can stay right where they are, as far as I'm concerned.

[DEFENSE COUNSEL]: I'm objecting to the Court's process. That's what I would say.

THE COURT: A process which I've followed for 15 years.

At another point, the judge remarked:

THE COURT: What is the State's position? I think the jury is entitled to see –

[ASSISTANT STATE'S ATTORNEY]: Your Honor, Mr. Mainor –

THE COURT: – the resolution of this case.

Finally, at the conclusion of the sentencing, the judge released the jury, stating:

THE COURT: Mr. Foreman, and ladies and gentlemen of the jury, thank you very much for your services. It was not an easy case to judge. So thank you, you are now free to go.

With regard to the trial judge's comments concerning Mr. Mainor's mother's absence at the sentencing hearing, the following colloquy occurred:

THE COURT: I see no reason to postpone sentencing. What will a long-form PSI tell me, [defense counsel]?

[DEFENSE COUNSEL]: Well, for example, my client's mother was here yesterday, she's unable to be here this morning. I do think it's important that the Court has some background information about my client in order to fashion an appropriate sentence. Everybody is –

THE COURT: Well, why isn't his mother here today?

25

[DEFENSE COUNSEL]: Well, I think she has this thing called work that –

THE COURT: Okay.

[DEFENSE COUNSEL]: – she had to attend.

THE COURT: So it's obviously not that important to her.

[DEFENSE COUNSEL]: She was here all day yesterday.

Later, the following exchange occurred:

[DEFENSE COUNSEL]: My client is very young. As I indicated to the Court, I wish that his mother was capable of being here. Unfortunately she did have to work.

THE COURT: She could be here, [defense counsel], you know that.

[DEFENSE COUNSEL]: She was here all day yesterday, Your Honor. It is hard for people to get away from work multiple days in a row, especially if they're in, you know, doing certain types of jobs.

And, obviously, for that reason we thank the jury for their service, having potentially to have been away a second day from their employment responsibilities.

Mr. Mainor contends that the trial judge's consideration of the "nonexistent right of a jury" to observe sentencing from the jury box was an untenable ground upon which to exercise discretion—thereby, further supporting a finding of abuse of discretion for the trial court's refusal to postpone sentencing. Additionally, Mr. Mainor asserts that the trial judge's comments about his mother "reflected unfounded, negative, assumptions" about her that were purely speculative and "based on no facts whatsoever." As such, Mr. Mainor maintains that these comments created an appearance of unfairness and partiality, thereby

26

depriving him of his due process right to a fair trial and constituting yet another abuse of discretion.

In reading these colloquies, we are deeply troubled by the comments of the trial judge. We do not agree with the State's contention that these "comments did not affect the postponement ruling and were therefore harmless[.]" Nor do we agree with the State's characterization of them as merely "stray comments." It is evident by the exchanges between Mr. Mainor's counsel and the court that the trial judge was inclined to not merely permit, but indeed require, the jury to remain in the jury box for the sentencing. The trial judge's remark of the jury's entitlement to see the case to resolution while contemporaneously asking the State its position on postponement provides sufficient evidence that the trial judge's interest in the jury's presence was a factor taken under consideration when declining to postpone the sentencing. As such, the perceived entitlement of the jury to observe sentencing was an untenable ground on which the trial judge exercised discretion, further supporting our earlier determination that the trial court's refusal to postpone Mr. Mainor's sentencing was an abuse of discretion.

The comments the trial judge made pertaining to the absence of Mr. Mainor's mother reinforce our conclusion that the trial judge abused his discretion. We find this case analogous to *Jackson v. State* where we held that the remarks of a trial judge at a defendant's sentencing—specifically comments about the defendant's race and place of residence—to "exceed[] the outer limit of a judge's broad discretion in sentencing and therefore amount[] to the application of impermissible sentencing criteria." 364 Md. at 195. In *Jackson*, we expressly stated that a defendant has the right to not only fairness and

27

impartiality from a sentencing judge, but also to the appearance of an impartial and disinterested sentencing judge:

> A defendant in a criminal case has a right to a fair trial. It is well settled in Maryland that fundamental to a defendant's right to a fair trial is an impartial and disinterested judge. This fundamental right of fairness extends to the sentencing phase of a trial. Furthermore, a *defendant has a right to a trial in which the judge is not only impartial and disinterested, but who also has the appearance of being impartial and disinterested.*

*Id.* at 206–07 (emphasis added) (citations omitted). We then went on to note that "what is at stake is the public perception of the integrity of our criminal justice system." *Id.* at 207 (quoting *Young v. United States*, 481 U.S. 787, 811 (1987)). Additionally, we articulated a standard to determine abuse of discretion where comments of the sentencing judge are challenged:

> The sentencing judge's comments during petitioner's sentencing phase calls the fairness of the sentence into question. Again, we note, it is not that we can affirmatively say that the sentencing judge was motivated by impermissible considerations reflecting ill-will or prejudice, but it is a fact that his comments might lead a reasonable person to infer that he might have been motivated by ill-will or prejudice . . . . *If a judge's comments during sentencing could cause a reasonable person to question the impartiality of the judge, then the defendant has been deprived of due process and the judge has abused his or her discretion.*

*Id.* at 207 (emphasis added) (citations and quotations omitted).

Here, just as in *Jackson*, it is impossible for us to affirmatively say that the trial judge was operating with ill will or bias towards Mr. Mainor or his mother when making comments about Mr. Mainor's mother's absence, including that it was "obviously not that important to her" to be present and that "she could be here" if she desired. However, it is indisputable that the dismissive and disrespectful comments concerning Mr. Mainor's

28

mother, in combination with the trial judge's other comments and actions, could cause a reasonable person to question the impartiality of the trial judge. In sum, we conclude that Mr. Mainor was deprived of his due process right to a fair sentencing and that the trial judge abused his discretion. Accordingly, we order re-sentencing before a different judge.

## CONCLUSION

For the foregoing reasons, we hold that the trial judge abused his discretion by refusing to postpone Mr. Mainor's sentencing process, in view of the fact that the trial judge also denied Mr. Mainor's request for a long-form PSI and was made aware that the only other source of additional information to mitigate Mr. Mainor's punishment—his mother's testimony—was unobtainable on the date of sentencing. We additionally hold that the trial court's consideration of the jury's presence during sentencing was an untenable reason to exercise discretion in denying the postponement request. Lastly, we hold that the trial judge's dismissive comments about Mr. Mainor's mother during sentencing could lead a reasonable person to infer the trial judge's partiality and ill-will towards the defendant, thereby supporting our earlier determination of an abuse of discretion. We accordingly reverse the Court of Special Appeals and remand the case to that court with instructions to vacate the sentence of the Circuit Court for Wicomico County and to remand the case to that court for re-sentencing before a different judge.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO VACATE THE SENTENCE OF THE CIRCUIT COURT FOR WICOMICO COUNTY AND TO**

**REMAND THIS CASE TO THAT COURT FOR RE-SENTENCING BEFORE A DIFFERENT JUDGE; COSTS TO BE PAID BY WICOMICO COUNTY.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/55a20cn.pdf